James H. Anderson, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 59989.   Promulgated September 26, 1934.

*Frederick E. King, Esq.*, and *Edward L. Blackman, Esq.*, for the petitioner.

*Stanley B. Anderson, Esq.*, for the respondent.

### OPINION.

Morris: The respondent having determined a deficiency in income tax of $28,792.96 for the year 1929, the petitioner brings this proceeding for the redetermination thereof, alleging error in the determination by reason of adding to his gross income for that year $135,000 received from the United Verde Copper Co. on July 1, 1929, the contention being that the amount so received was a gift.

The petitioner first entered the employ of the United Verde Copper Co., a corporation—which was substantially owned by the late William A. Clark, former United States Senator from Montana, and his family—in 1901, as a stenographer. Shortly thereafter he was employed by the Senator himself, whom he served in Washington as private secretary.

In or about 1912 the petitioner was made secretary of the Copper Co. at a salary of $50 a month. His duties then were "nominal", requiring the sending out of notices of meetings, keeping of records of proceedings, signing of checks, and the employing of clerical help, etc. In addition to his position with the company he served the Senator in a secretarial capacity until the latter's death in 1925, at which time he was receiving a salary of $900 a month from the Copper Co., $1,100 a month from the Senator, and $500 a month from the Senator's son, Charles W. Clark. That compensation continued until December 1928, when the Senator's estate was settled and closed, at which time Charles W. Clark, president of the Copper Co., informed him that the company would thereafter pay him the amount of compensation lost to him by reason of the death of the Senator and the settlement of his estate, so that in 1929 his compensation from the Copper Co. was $2,700 per month. His compensation from Charles W. Clark was for the rendition of services of a confidential and private nature.

Considerable friction having grown up within the organization between the petitioner and others in the employ of the Copper Co., the petitioner threatened to resign but was twice dissuaded by the president of the company. The situation having grown worse in 1929, he renewed his threat to resign and acceptance thereof followed.

The petitioner, as secretary of the Copper Co., received written instructions from Charles W. Clark, its president, under date of May 20, 1929, instructing him to call a special meeting of the board of directors on May 28, 1929, for the purpose of taking appropriate action upon the following matters:

(a) The question of making an allowance as a retirement fund for Mr. J. H. Anderson, resigned;

(b) The filling of the vacancy on the board caused by the resignation of Mr. Anderson;

(c) The election of a successor to Mr. Anderson as secretary, to be effective July 1, 1929.

The meeting was duly held on the date stated, when the resignation of the petitioner was accepted " with regret " and the following resolution adopted:

Whereas, James H. Anderson has rendered long, valuable and faithful service as an employee of the United Verde Copper Company, a corporation, covering a period of approximately 28 years;

And whereas, he has now placed in the hands of the board of directors his resignation:

Now, therefore, be it resolved, that his resignation be and the same is hereby accepted and it is further resolved that in recognition of such long, valuable and faithful service and the matters hereinbefore set forth he be and is hereby granted a lump sum of $135,000.

In connection with said above resolution, the chairman stated that the amount set out therein, after payment of taxes, etc., by Mr. Anderson would yield him approximately $100,000, and such amount has been based upon precedent established by his father many years ago.

Following the foregoing meeting of the board of directors the petitioner was informed by Charles W. Clark that the board had voted him the sum of $135,000 and instructed him to prepare a check for that amount, which he did.

The company's general auditor, a certified public accountant, caused the amount to be charged to salary expense account of the company, and it was deducted as an expense in the company's tax return for the year 1929.

The petitioner having failed to include the said sum of $135,000 in his gross income for the taxable year 1929, the respondent increased his income by that amount and determined the deficiency of $28,792.96 here under consideration.

Our question, therefore, is whether, under the foregoing facts and the testimony of record, the amount which the petitioner received

was intended as a gift, as the petitioner contends, or as additional compensation as the respondent has determined.

The petitioner's counsel argues that any inferences that might be drawn from the resolution of the board of directors itself that the payment was intended to be compensation for services rendered is contradicted by the established facts. In this connection he points, among other things, to the language of the written instructions from the president of the company stating that the purpose of the meeting was to make " an allowance as a retirement fund for Mr. James H. Anderson, resigned ", the words " paid " and " granted ", and the use of the word " gift " by the president of the company when he announced to the petitioner that the directors had voted him the sum in question.

The resolution unmistakably shows, by the language used therein, that the amount voted the petitioner was not intended as a gift but was for and in consideration of " valuable and faithful service " rendered by him to the company over a long period of years. That the board of directors in the preparation of that resolution did not use the language which it did in any loose sense and that it fully realized what it was doing and that it did not intend making a gift is strongly evidenced by the fact that the taxable status of the subject matter received careful consideration, the conclusion having been reached that after the payment of taxes there would remain a net to him of approximately $100,000. It seems to us that any effort to show that the resolution did not mean exactly what it said should certainly include the testimony of its authors. The only member of the board of directors to testify was H. H. St. Clair, but his testimony threw very little, if any, light upon the subject. He said that there was no discussion as to why the amount was voted to the petitioner.

Another argument advanced by the petitioner is that the services rendered to the Copper Co. were not such as to constitute any possible basis for the payment of the $135,000 as additional compensation. Considerable testimony was offered in an effort to minimize the value of the services performed by the petitioner for the company and to show that he had already been amply compensated. For instance, the testimony is to the effect that his services were merely " nominal " in 1921, and that there had been practically no change in the nature of his services between that time and 1925, although, it will be observed, his compensation had increased from $50 a month to $900 a month during that time, which facts are difficult of reconciliation unless we are to impute a gross misapplication of corporate funds to the company's officers and directors, which we can not do. *Noel* v. *Parrott*, 15 Fed. (2d) 669; 273 U.S. 754.

Nor is the fact that he devoted only about two hours a day to the company's affairs any indication of his value to it. If that fact indicates anything at all it is that the company regarded him as a most valuable employee because it considered his services to be worth at least $2,700 a month in 1929. His long period of service with the company, the fact that on several occasions he attempted to resign because of conditions beyond his control, but was not permitted to do so, the fact that he had grown to a position of importance, not only in the affairs of the corporation itself, but in the affairs of the principal owners thereof, and the fact that his compensation had grown tremendously since the beginning, indicate to us that the board of directors meant exactly what it said in its resolution, that his services were both " valuable " and " faithful."

In *Willis L. Garey*, 16 B.T.A. 274, we pointed out, as had theretofore been done in *Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U.S. 754, that not only must the element of consideration be absent in order to constitute a valid gift, but that the essential elements of " intention " and " competency " of the donor must be present. We are not convinced that a gift was intended. Respecting the question of competency, the Board said:

It will be observed that the board of directors and not the stockholders voted this payment to the petitioner. In view of the fact that the only evidence flowing from the company itself shows that the money paid the petitioner was regarded by it as a salary or compensation, it is pertinent to determine whether we should, because of the contra testimony of the petitioner, impute an intention to make a gift. Again quoting from *Noel* v. *Parrott, supra,* the court said, " It needs neither argument nor citation of authority to establish the proposition that the directors were without authority to give away the corporate assets, and that for them to make to several of their members and other persons a gift of a large sum of money from the corporation assets would be neither ' wise' nor ' proper,' and would amount to an illegal misapplication of corporate funds. We must assume that the directors did not intend such a flagrant violation of their trust."

Applying the test of competency in the light of the language just quoted, we feel that we cannot impute an intention to do that which if done would constitute an illegal misapplication of corporate funds, but must assume that everything done was regular and according to law.

Here, as in *Willis L. Garey*, and *Noel* v. *Parrott, supra,* the board of directors, as such, voted this payment to the petitioner. Therefore, notwithstanding the members of the board were substantial stockholders, there were other stockholders who were not members of the board and it cannot be said that it was, in effect, the action of the stockholders.

The board of directors having granted this payment, which, according to its own resolution, was in consideration of past services to it; the company's accountant, whose duty it was to know for what the payment was made, having classified it at the time as

salary, for accounting purposes; a deduction having been claimed therefor by the company in the computation of its net taxable income; the respondent having found that there was no gift, but that there was a receipt of taxable income, and such finding, in our opinion, not having been overcome by evidence to the contrary, we are constrained to approve his determination. Cf. *Willis L. Garey, supra; Chauncey L. Landon*, 16 B.T.A. 907; *Noel* v. *Parrott, supra;* and *Arthur L. Lougee*, 26 B.T.A. 23; affd., 63 Fed. (2d) 112.

*Decision will be entered for the respondent.*