Joseph Martin Umstead v. Commissioner.
Umstead v. Commissioner
Docket No. 48509.
United States Tax Court
T.C. Memo 1955-157; 1955 Tax Ct. Memo LEXIS 184; 14 T.C.M. (CCH) 591; T.C.M. (RIA) 55157; June 16, 1955
Joseph Martin Umstead, 206 North Dillard Street, Durham, N. C., pro se. Herman Wolff, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding involves a deficiency of $414.06 in income tax determined against petitioner for 1949, and presents the question whether $3,440.02 received in that year by petitioner is taxable income under section 22(a), Internal Revenue Code of 1939. Findings of Fact Petitioner, an individual 73 years of age, lives in Durham, North Carolina. He filed his income tax return for the calendar year 1949 with the collector of internal revenue for the district of North Carolina. The return constituted a claim for a refund which was afterward made to petitioner. *185 Attached to the return was a request for a ruling with respect to the payments here in controversy. During 1948 petitioner, who had been employed since 1909 by the Wright family or by corporations owned by that family, developed heart trouble and was advised by a physician to stop work or to "stop for at least a month." He disclosed this situation to R. H. Wright, president and treasurer of Wright Real Estate Company and Allenton Company and an official of Wright Machinery Company, and suggested that they review petitioner's ability to continue his employment. At that time Wright owned approximately one-sixth of the stock in Wright Real Estate Company and one-third of the stock in Allenton Company. The remainder of the Allenton Company stock was owned by members of Wright's family. In 1949 Wright Real Estate Company paid petitioner $1,200, Allenton Company paid him $600 as "pension" and $190.02 in commissions, and Wright Machinery Company paid him $1,400. Petitioner did not report any of these amounts as income in 1949. These payments were made on the initiative of the companies and no limitation was fixed as to how long the payments were to continue. In 1949 the stock of Wright *186 Machinery Company was sold and payments to petitioner from that company ended on August 1. The payments from Allenton Company consisted of $150 per month during the last 4 months of 1949 and of certain commissions charged by Allenton Company and turned over to petitioner. The payments from Wright Real Estate Company were $100 per month throughout 1949. Neither Wright Real Estate Company nor Allenton Company was a charitable organization, and no authorization for making the payments to petitioner was given by the stockholders of Allenton Company prior to the first payment. There were no minutes of any meetings of the three companies authorizing these payments to petitioner in 1949. Each of the three companies treated these payments as a business expense and deducted them as an expense for income tax purposes. After petitioner quit work in 1948, he applied for social security benefits and during each month of 1949 received such benefits. During the remainder of 1948 and all of 1949, Wright Real Estate Company and Allenton Company employed a bookkeeper to perform services previously rendered by petitioner. Sometime after 1949 petitioner was re-employed by Allenton Company and Wright *187 Machinery Company. Petitioner received $50 in 1949 as a fee for preparing an income tax return. He did not report this as income in 1949. The $3,440.02 received by petitioner in 1949 was not a gift but was compensation received in that year for services. Opinion This is another in a long series of cases involving payments to a former employee. Whether they are ordinary income to the recipient or should be treated as nontaxable gifts is a question to be decided upon the individual circumstances of each case. Fisher v. Commissioner, (C.A. 2) 59 Fed. (2d) 192. Our ultimate finding incorporates our factual determination of the issue. We see no escape from the conclusion here that these payments were intended as delayed compensation pension or bonus payments to petitioner, made to him because of his personal services although for past performance and without enforceable legal obligation. James H. Anderson, 31 B.T.A. 197, affirmed per curiam (C.A. 2) 79 Fed. (2d) 979; see Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730. The intention of the parties is supposed to govern and particularly that of the payor. Fisher v. Commissioner, supra. *188 That the employer deducted the amounts as business expense is not without significance. See Noel v. Parrott, (C.A. 4) 15 Fed. (2d) 669, certiorari denied 273 U.S. 754. The same is true of its treatment of the item on its books of account. Willkie v. Commissioner, (C.A. 6) 127 Fed. (2d) 953, certiorari denied 317 U.S. 659. We find all the cases reaching a contrary conclusion to be readily reconcilable. In the leading case of Bogardus v. Commissioner, 302 U.S. 34, the Court went to some lengths to point out that the payments were made by a new corporation and not the one which had been the taxpayer's employer. In a number of other cases, payments to retired ministers by grateful congregations present the not unreasonable situation that the payment was treated by the congregation as a gift. E.g., Schall v. Commissioner, (C.A. 5) 174 Fed. (2d) 893; Mutch v. Commissioner, (C.A. 3) 209 Fed. (2d) 390; Kavanagh v. Hershman, (C.A. 6) 210 Fed. (2d) 654; Abernethy v. Commissioner, (C.A., D.C.) 211 Fed. (2d) 651. No case to which we have been referred would authorize similar *189 treatment here. Decision will be entered for the respondent.