# BOGARDUS *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 15.   Argued October 18, 1937.—Decided November 8, 1937.

*Mr. William D. Whitney,* with whom *Mr. George G. Tyler* was on the brief, for petitioner.

*Mr. A. F. Prescott,* with whom *Solicitor General Reed, Assistant Attorney General Morris, Messrs. Sewall Key* and *John G. Remey* and *Miss Helen R. Carloss* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The question for decision is whether a sum of money received by petitioner in January, 1931, was "compensation" subject to the federal income tax, or a "gift" exempt therefrom. The Commissioner held it to be compensation, constituting part of petitioner's gross income, and declared a deficiency. The Board of Tax Appeals sustained the determination of the Commissioner; and the court below, upon review, affirmed the order of the Board. 88 F. (2d) 646.

The decisions of other courts of appeal upon the question under review are conflicting. Upon the one side, the First Circuit, *Walker* v. *Commissioner,* 88 F. (2d) 61, Judge Morton dissenting, the Fourth, *Hall* v. *Commissioner,* 89 F. (2d) 441, and the Fifth, *Simpkinson* v. *Commissioner,* 89 F. (2d) 397, lend definite support to the decision of the court below. Upon the other side, more or less definitely to the contrary, are to be found the decisions of the Third Circuit, *Jones* v. *Commissioner,* 31 F. (2d) 755; *Cunningham* v. *Commissioner,* 67 F. (2d) 205, the Sixth, *Lunsford* v. *Commissioner,* 62 F. (2d) 740, and the Ninth, *Blair* v. *Rosseter,* 33 F. (2d) 286. No useful purpose would be served by reviewing these decisions; and we pass to a consideration of the case before us. The facts follow:

The amount ($10,000) received by petitioner was part of a distribution, aggregating over $600,000, made by the

Unopco Corporation at the instance of its stockholders to petitioner and others who had theretofore rendered service as employees or in some other capacity to the Universal Oil Products Company. The Universal company was a corporation organized in 1914. In the beginning, its only asset was an application for a patent for a process for refining petroleum and manufacturing gasoline. It thereafter acquired other patents, which it licensed to various producers on a royalty basis. Beginning in 1922, its business developed increasingly until by 1930 its royalties amounted to about $9,000,000. In January, 1931, its entire stock was sold to the United Gasoline Corporation for $25,000,000. Prior to the sale, and in contemplation of it, the Unopco Corporation had been organized for the purpose of acquiring, and it did acquire, certain assets of the Universal company of the value of over $4,000,000. Up to the time of this acquisition, the Unopco company had never engaged in any business activities, and thereafter its only business was the investment and management of the assets thus acquired.

All of the former stockholders of the Universal company became stockholders of the Unopco, with the same proportionate holdings. None of them, after the sale of the Universal stock, held any stock in the Universal, or in the United Gasoline Corporation. Under its new ownership, the Universal continued to carry on the same business, retaining a large part of its assets. A few days after the sale of the Universal company's stock, the former stockholders, then stockholders of the Unopco, held a meeting at which it was proposed that they show their appreciation of the loyalty and support of some of the employees of the Universal company by making them a "gift or honorarium." A resolution to that effect was adopted at a meeting of the board of directors of Unopco on

January 9, 1931, and by the stockholders the following day. By these resolutions, it was resolved that the sum of $607,500 be appropriated, paid and distributed, as a bonus, to 64 former and present employees, attorneys and experts of Universal Oil Products Company, in recognition of the valuable and loyal services of said employees, attorneys and experts to said Universal Oil Products Company. Payments ranged in amount from $100,000 to $500. Some of the recipients had been out of the employ of the Universal company for many years; and one of them was the sister of an employee killed in an explosion about the year 1919.

At the meeting of the former stockholders of Universal, the former president of that company, then president of the Unopco corporation, said that they had reason to congratulate themselves on their great good fortune in the Universal company, which started with nothing and had been built up in a phenomenal way; that they had profited largely; that during the years when they were struggling and moving forward they had had the loyal support of a number of employees, and he thought it would be a nice and generous thing to show their appreciation by remembering them in the form of a gift or honorarium. All of the stockholders acquiesced, with the result "that it was understood that we would come forward and make these presents or gifts to the employees that were to be slated for it." The matter had theretofore never been discussed among the old stockholders; and this was the first time it had been brought up for consideration. None of the recipients had ever been employed by Unopco or by any of the former stockholders of the Universal. The parties stipulated that neither the Universal company nor the United "was under any legal or other obligation to pay said employees . . . any additional . . . compensation" other than that which they were paid by the Universal

company*; and that neither Unopco nor any of its stockholders, nor any of the stockholders of Universal, was at any time under any legal or other obligation to pay any of said employees, attorneys or experts, including petitioner, any salary, compensation or consideration of any kind.

It was further stipulated—"said payments were not made or intended to be made by said Unopco Corporation or any of its stockholders as payment or compensation for any services rendered or to be rendered or for any consideration given or to be given by any of said employees, attorneys or experts to said Unopco Corporation or to any of its stockholders." None of the three corporations or their stockholders ever made or claimed any deduction for federal income-tax purposes in respect of the payments made to the petitioner and the others. Payments were charged, in January, 1931, not to expense but to surplus account on the books of the Unopco company.

The distribution was made to petitioner and the other employees, attorneys and experts by checks, delivered either personally or by mail; and in each instance with the accompanying statement that the moneys represented by such checks were given at the instance of the stockholders of the Unopco Corporation as a gift and gratuity, and were, therefore, not subject to income tax on the part of the recipients.

The Board of Tax Appeals concluded that, from a careful consideration of all the evidence, "the payments made by Unopco to the petitioners and others were additional compensation in consideration of services rendered to Universal and were not tax-free gifts." This, as we re-

---

* The reference to additional compensation paid by the Universal company probably refers to a "bonus," which was clearly compensation, paid by that company to its various employees, some 400 in number, in 1930.

cently have pointed out, is "a conclusion of law or at least a determination of a mixed question of law and fact. It is to be distinguished from findings of primary, evidentiary or circumstantial facts. It is subject to judicial review and, on such review, the court may substitute its judgment for that of the board." *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, 491; *Helvering* v. *Rankin,* 295 U. S. 123, 131. If the conclusion of the board be regarded as a determination of a mixed question of law and fact, it has, as we shall presently show, no support in the primary and evidentiary facts. The ultimate determination, therefore, should be overturned, under the doctrine of *Helvering* v. *Rankin, supra,* as a matter of law.

The statutory provisions involved are very plain and direct. Section 22 (a) of the applicable revenue Act (45 Stat. 791) provides that "gross income," among other things, includes "compensation for personal service, of whatever kind and in whatever form paid." Subdivision (b) (3), immediately following, provides that "the value of property acquired by gift, bequest, devise or inheritance" shall not be included in gross income and shall be exempt from taxation under the income-tax title.

The court below thought that payments such as are here involved "may be at once 'gifts' under § 22, subdivision (b) (3) and 'compensation for personal service' under subdivision (a)." Such a view of the statute is inadmissible and confusing. The statute definitely distinguishes between compensation on the one hand and gifts on the other hand, the former being taxable and the latter free from taxation. The two terms are, and were meant to be, mutually exclusive; and a bestowal of money cannot, under the statute, be both a gift and a payment of compensation. The court below went on to say that decisions like *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716, proved that payments could be

both gifts and compensation for personal services. The most casual reading of that case shows that it is authority for no such doctrine. There, an employer had paid the income tax assessed upon the salary of an employee. The employee had entered upon the discharge of his duties for the year in question under an express agreement to that effect. Quite evidently the payment, so agreed upon in advance, was in consideration of services to be rendered and in no sense a gift. It was a part of the employee's compensation; and the court so held. The idea that it could be a gift in any sense was definitely rejected. We said (p. 730), "Nor can it be argued that the payment of the tax in No. 130 was a gift. The payment for services, even though entirely voluntary, was nevertheless compensation within the statute."

If the sum of money under consideration was a gift and not compensation, it is exempt from taxation and cannot be made taxable by resort to any form of subclassification. If it be in fact a gift, that is an end of the matter; and inquiry whether it is a gift of one sort or another is irrelevant. This is necessarily true, for since all gifts are made non-taxable, there can be no such thing under the statute as a taxable gift. A *claim* that it is a gift presents the sole and simple question whether its designation as such is genuine or fictitious—that is to say, whether, though *called* a gift, it is in *reality* compensation. To determine that question we turn to the facts, which we have already detailed.

From these we learn that the recipients of the bounty here in question never were employees of the Unopco company, or of any of its stockholders. The Universal company, in whose employ some of the recipients then were, was at the time in no way connected with the Unopco company or any of its stockholders. Some of the recipients had not been in the employ even of the Universal company for many years, and one of them

never had been an employee. Neither the Unopco company nor any one else was under any obligation, legal or otherwise, to pay any of the recipients, including petitioner, any salary, compensation or consideration of any kind. Such is the express stipulation of the parties. And most significant is the further stipulated fact that the disbursements were *not made or intended to be made* for any services rendered or to be rendered or for any consideration given or to be given by any of said employees, attorneys or experts to said Unopco corporation or to any of its stockholders. If the disbursements had been made by the Universal company, or by stockholders of that company still interested in its success and in the maintenance of the good will and loyalty of its employees, there might be ground for the inference that they were payments of additional compensation. Compare *Noel* v. *Parrott*, 15 F. (2d) 669. But such an inference, even upon one of these suppositions, well might strain the realities in the light of the foregoing facts. However that may be, the disbursements here were authorized and the burden borne by persons who were then strangers to the Universal company and its employees, under no obligation, legal or otherwise, to that company or to any of its present or former employees. There is entirely lacking the constraining force of any moral or legal duty as well as the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act. The intent is shown by the appeal made at the stockholders' meeting to the effect that it would be a nice and generous thing for these former stockholders of the Universal to show their appreciation of the past loyalty of that company's employees by remembering them in the form of a "gift or honorarium," and by the common understanding then reached that the stockholders would make the suggested "presents or gifts" to these employees. Quite evidently, none of these stock-

holders had the slightest notion that a *payment* of compensation was to be made.

In sum, then, the case comes to this: The stockholders of the Unopco, having at the time no connection with the Universal company, but rejoicing in the fact of their own great good fortune, and mindful of the former loyal support of a number of employees of the Universal company, and desiring to remember them "in the form of a gift or honorarium," resolved to make through the Unopco company the distribution in question. In doing so, they were moved, as Judge Swan said in his dissenting opinion below, to an act of "spontaneous generosity." We agree with this dissenting opinion of Judge Swan, and the dissenting opinion of Judge Morton in *Walker* v. *Commissioner, supra,* as stating the correct view of the matter.

The only facts which even seem to militate against this view are (1) that the Unopco stockholders had bene-. fited by the former services of the recipients; (2) that the stockholders at their meeting described the payment as a gift or "honorarium"; and (3) that the resolutions authorized the payment as a "bonus . . . in recognition of the valuable and loyal services" of the employees, etc.

1. Because the Unopco stockholders had benefited by the past services of the recipients, it by no means follows that the distribution in question was not a gratuity. It nowhere appears in the record that full compensation had not been made for these services. There would seem to be a natural inference to the contrary; and the inference is made determinate by the stipulated fact that no one was under any obligation, legal or otherwise (and this would include a moral obligation, however slight) "to pay any additional compensation." There is no ground for saying that the benefit received and the compensation then paid for it were not equivalents.

2. It is said that the word "honorarium" always denotes a compensatory payment. Without agreeing to this

broad generalization, it is enough to say that the word is not here used by itself, but coupled with the word "gift" in the phrase "gift or honorarium." Presumptively, the user of the phrase must have known that the word "gift" did not include a compensatory payment, and it is hardly to be supposed that he would consciously nullify that word by the immediate use of another meaning the opposite. The phrase was used in an informal speech at the stockholders' meeting made by the president of the Unopco company. The whole tone of the meeting indicates that the intention was to make gifts in recognition of, not payments for, former services. The conclusion in which the stockholders acquiesced was that they would come forward and make these "presents or gifts" to the employees. In the light of all the circumstances, the absence of moral or other obligation and of any expectation of future benefit, it is reasonable to conclude that the word "honorarium," if the court below correctly defined it, was loosely and inaccurately used.

3. The resolutions, which employ the word "bonus," were adopted to carry into effect the will of the stockholders expressed at their meeting. What occurred at that meeting, as we have already said, indicated their clear intention to make gifts. And since intention must govern, we must consider the word used in the light of the intention. A similar question was before the Court of Appeals for the District of Columbia in Levey v. Helvering, 62 App. D. C. 354; 68 F. (2d) 401. There, the corporate resolution characterized the payments to be made to reimburse certain officers for income taxes paid on salaries as "gifts." But the court held this characterization did not settle the matter. It reviewed the facts and reached the conclusion that in the light of them what was intended was not a gift but a bonus, and decided the case in accordance with that view. In other words, the thing that was decided upon and intended, in that case as in

this case, was misdescribed in the resolutions to carry the decision and intention into effect. In *Rogers* v. *Hill,* 289 U. S. 582, 591–592, we held, following the dissenting opinion in the court below, that a bonus payment having no relation to the value of services for which it is given is in reality a gift in part. Certainly, where all the facts and circumstances in the case, including the express stipulation of the parties, clearly show the making and the intent to make a gift, it cannot be converted into a payment for services by inaccurately describing it, in the consummating resolutions, as a bonus.

Some stress is laid on the recital to the effect that the bounty is bestowed in recognition of past loyal services. But this recital amounts to nothing more than the acknowledgment of an historic fact as a reason for making the gifts. A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient. Compare *Hobart's Admr.* v. *Vail,* 80 Vt. 152; 66 Atl. 820.

*Judgment reversed.*

MR. JUSTICE BRANDEIS, MR. JUSTICE STONE, MR. JUSTICE CARDOZO, and MR. JUSTICE BLACK, dissenting.

A payment received as compensation for services is taxable as income, though made without consideration, and hence for many purposes a gift. *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716, 730. To hold, as the prevailing opinion seems to do, that every payment which in any aspect is a gift is perforce not compensation, and hence relieved of any tax, is to work havoc with the law. A large body of decisions, whose provenance is *Old Colony Trust Co.* v. *Commissioner,* would be annulled by such a test. See e. g. *Weagant* v. *Bowers,* 57 F. (2d) 679; *Fisher* v. *Commissioner,* 59 F. (2d) 192; *Bass* v. *Hawley,* 62 F. (2d) 721; *United States* v. *McCormick,* 67 F. (2d) 867; *Botchford* v. *Commissioner,* 81 F. (2d)

914; *Schumacher* v. *United States,* 55 F. (2d) 1007. Cf. *Lucas* v. *Ox Fibre Brush Co.,* 281 U. S. 115. Their teaching makes it plain that the categories of "gift" and "compensation" are not always mutually exclusive, but at times can overlap. What controls is not the presence or absence of consideration. What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt.

We think there was a question of fact whether payment to this petitioner was made with one intention or the other. A finding either in his favor or against him would have had a fair basis in the evidence. It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. Perhaps, if such a function had been ours, we would have drawn the inference favoring a gift. That is not enough. If there was opportunity for opposing inferences, the judgment of the Board controls. *Elmhurst Cemetery Co.* v. *Commissioner,* 300 U. S. 37; *Helvering* v. *Tex-Penn Oil Co.,* 300 U. S. 481.