SAMUEL POORMAN, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102994.   Promulgated September 12, 1941.

*Samuel Poorman, Jr., Esq.,* pro se.
*Byron M. Coon, Esq.,* for the respondent.

78

OPINION.

MELLOTT: Petitioner, in support of his contention that the $8,394.92 was a gift, relies principally upon *Bogardus* v. *Commissioner*, 302 U. S. 34. In that case, the taxpayer, prior to 1931, had been in the employ of the Universal Oil Products Co., the business and assets of which had greatly increased between 1922 and 1930. Early in 1931, its entire stock was sold to the United Gasoline Corporation for $25,000,000. Prior to the sale, and in contemplation of it, the Unopco Corporation had been organized for the purpose of acquiring, and it did acquire, certain assets of the Universal Co. of the value of over $4,000,000. All of the former stockholders of the latter company became stockholders of Unopco, with the same proportionate holdings. None of them, after the sale of the Universal stock, held any stock in the Universal Co., or in the United Gasoline Corporation. Under its new ownership, the Universal Co. continued to carry on the same business, retaining a large part of its assets. A few days after the sale of the Universal Co.'s stock, the former stockholders, then stockholders of the Unopco Co., held a meeting at which it was proposed that they show their appreciation of the loyalty and support of some of the employees of the Universal Co. by making them a "gift or honorarium." At meetings of the board of directors and stockholders of Unopco resolutions were adopted that $607,500 be appropriated, paid, and distributed as a bonus to 64 former and present employees of the Universal Co., in recognition of their valuable and loyal services. Bogardus continued to remain in the employ of the Universal Co. after the change of the ownership of its stock, and when the distribution was made by Unopco in 1931 he received $10,000. The Supreme Court held that this payment was a gift and not additional compensation.

There are several differences between the facts in the *Bogardus* case and those presently before us. "The recipients of the bounty * * * were never employees of the Unopco Company,

or any of its stockholders." Petitioner and the other employees who received the payments from the corporation had been in its employ until the sale of the properties to the city. "Neither the Universal Company nor any one else was under any obligation, legal or otherwise, to pay any of the recipients, including petitioner, any salary, compensation, or consideration of any kind." The Los Angeles Gas & Electric Corporation, however, was at least under a moral obligation to the employees whose services were being terminated through no fault of theirs. It had agreed with them "to provide and administer, at its own expense, the death and disability benefits" and to pay a portion of the net cost of securing a "retirement income." Though the record does not disclose the exact amount which the company had contributed and which "once made, * * * [was to] be used for employees' benefits and for no other purpose", it must have been a considerable amount. Petitioner's rights, for example, seem to have been to receive "retirement income" of at least $76 per month, insurance of at least $12,000, and disability benefits of $360 per month for 12 months and $300 per month for an additional 48 months. "It was recognized", said the vice president of the company and chairman of the benefit committee, "that in accordance with the terms of the pension plan, severance of employment meant sacrifice of pension rights except, I would say not only pension rights, but all rights under the pension benefit plan, with the exception that the life insurance in accordance with the regular provisions always continued for 31 days after termination of service. It was recognized that the employees were losing various rights in leaving the service of the corporation." For this reason "consideration commenced among the company officials as to what, if anything, could be done for the employees who were transferred to the city with the property * * * in consideration of the fact that they were going to lose their pension rights by termination of service." "Finally, after much discussion and study of the situation, the plan which was ultimately followed was worked out and a basis of compensation, additional compensation for past services, was formulated which, as stated in the President's letter, was in consideration of past valuable services and was based upon the present attained age of the employees, their length of service with the company, and the rates of wages which they had received during their period of employment."

In the *Bogardus* case the payments were charged "not to expense but to surplus." In the instant proceeding the payments were charged to expenses in connection with the sale of the properties. Here again the record is not very clear; but inferentially it seems that the charge could properly have been so classified only if it had

been necessary for the corporation to make the payments either to fulfill an obligation (even "a moral obligation, however slight", *Bogardus* v. *Commissioner, supra*), or to regain possession of some of the money which had been put up with the understanding it would "be used for employees' benefits and for no other purpose." It is also not without significance that the payments in the instant proceeding were designated by the corporation "additional compensation" while those in the *Bogardus* case were referred to as part of a "gift or honorarium" to the employees. True, calling a payment a gift, bonus, honorarium, additional compensation, or anything else does not change, or establish, its true characteristic; but it is at least a circumstance to be considered in determining the intention of the parties. "Intention" said the Court in the *Bogardus* case, "must govern." The Court was referring to the intention of the one making the payment. The Circuit Court of Appeals for the Ninth Circuit indicated in *Botchford* v. *Commissioner*, 81 Fed. (2d) 914, that it felt that the intention of the employer was particularly important— a view evidently shared by other Circuit Courts, *Fisher* v. *Commissioner*, 59 Fed. (2d) 192; *Walker* v. *Commissioner*, 88 Fed. (2d) 61; *Levey* v. *Helvering*, 68 Fed. (2d) 401; *Bass* v. *Hawley*, 62 Fed. (2d) 721, and also by this Board. Cf. e. g. *N. H. Van Sicklen, Jr.*, 33 B. T. A. 544. Then, too, as the court pointed out in *Botchford* v. *Commissioner, supra*, as a general rule directors of a corporation have no power or authority to give away any of its assets, cf. *Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754; and "if the directors could not give away this sum, and the books of the corporation show that it was not given away, it must be presumed that the payment was not a gift."

Whether the payment to this petitioner was, or was not, a gift is a mixed question of law and fact. Respondent determined that it was not a gift. Petitioner, undertaking to overcome the presumption attaching to this determination, *Botany Worsted Mills* v. *United States*, 278 U. S. 282, has shown and it has been found as a fact that he, previous to the receipt of the sum in issue, had received all of his agreed salary. He argues that the additional payment not only was not "additional" compensation, but that it could not even be "compensation", since he had already been compensated in full. In *Botchford* v. *Commissioner, supra*, the court quoted with approval the following language used by the Circuit Court of Appeals for the Second Circuit in *Fisher* v. *Commissioner, supra:*

The doctrine that bonus payments and gratuitous "additional compensation" for past services may constitute taxable income has been frequently recognized in decisions of the lower Federal courts and of the Board of Tax Appeals.

We do not interpret the *Bogardus* case as laying down any different principle. Cf. *Georgia S. Williams*, 36 B. T. A. 974.

Petitioner also contends that, since the corporation saw fit to enter the payment made to him and to the other employees upon its books as an expense item in connection with the sale of its electric properties, and since the evidence shows that they, and especially he, had nothing to do with making such sale, it follows that the corporation erred in characterizing the payment as additional compensation. There would be more substance to this contention if the respondent were required to prove that the payment was made in consideration of, and as compensation for, services rendered by petitioner in that particular transaction. But he has no such burden. He may rest upon the presumption of correctness attaching to his determination that the payment was not a gift, *Botany Worsted Mills* v. *United States, supra; Reinecke* v. *Spalding*, 280 U. S. 227; and petitioner must prove that this determination was erroneous. He has not sustained his burden merely by proving—if in fact he has proved—that it was improperly treated upon the books of the corporation. In other words, it was incumbent upon petitioner to prove that the corporation was not discharging some obligation to him by making the payment in question. The evidence indicates that the payments were made to compensate the employees for the loss of their rights under the "Uniform Pension and Benefit Plan" or to enable the company to withdraw the funds which had been put up with the insurance company in connection with such plan. This, in our opinion, was sufficient consideration to prevent the payments being absolute gifts. We therefore hold that the respondent committed no error in including the amount received by this petitioner in his gross income.

The only other error charged in the petition is the disallowance by the respondent of a deduction of $18.45. This is not discussed upon brief. The petition alleges that petitioner accidentally broke a pair of eyeglasses with their frame and replaced them during the taxable year at a cost of $18.45; that he had been unable to ascertain either the date of the acquisition of the glasses so broken or their cost; and that according to his best recollection the date of acquisition was within a year or two prior to their replacement, the cost being in excess of $18.45.

At the hearing petitioner admitted he did not have any "very satisfactory proof" that he had sustained a loss through casualty. (Sec. 23 (e) (3), Revenue Act of 1936.) He testified that he had paid $3 of the $18.45 to a doctor for examination of his eyes, $15 for new glasses, and 45 cents as state tax. This was the sole evidence offered. The claim for the deduction has probably been abandoned; but, if not, this issue must be resolved against petitioner for failure of proof.

*Decision will be entered for the respondent.*