*Decision will be entered under Rule 50.*

BERT P. NEWTON AND EDNA R. NEWTON, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15177. Promulgated September 30, 1948.

*William F. Knox, Esq.,* for the petitioners.
*A. W. Dickinson, Esq.,* for the respondent.

516

OPINION.

DISNEY, *Judge*: We first dispose of the question of loss claimed on the sale of real estate, also depreciation. The sole point is the value thereof on August 1, 1939, when converted from residence purposes to income production, for the petitioners claim that the value was $17,000, resulting in a loss when sale was made December 1, 1942, for $10,649.85 net, whereas the respondent thinks the value was such on the day of conversion of the residence to income production, that no loss was sustained. We have examined the evidence in detail but see no object in setting such detail forth here. Two real estate men testified to the $17,000 value, of which $3,500 was for the lot, in the opinion of one, $3,000 in the view of the other, and in particular they both testified that values were higher in 1939 than in 1942. Though it is not easy to reconcile such evidence with the increased rental value of the property shown by the raise in rents from $125 to $135 a month, or the advent of war and increased activity in sales, and though in some respects the testimony was not very convincing, we have, in general, accepted it. No contradictory evidence was offered from similar witnesses, or otherwise, by the respondent. The testimony as to $13,-500 for the buildings appears to reflect a fair consideration of both assessments. We have concluded and find that the property had on August 1, 1939, a value of $17,000, allocated $13,500 to buildings and $3,500 to land. Under Rule 50 the resulting ordinary loss and depreciation will be computed on that basis. The parties have agreed to compute depreciation on a 2 per cent rate.

The remaining problem is whether Bert P. Newton, on October 30, 1942, received the $5,000 from Standard Car Finance Corporation as a gift or as compensation. The petitioner relies primarily upon the application of *Bogardus* v. *Commissioner*, *supra*, the leading case on this question; and the respondent seeks to distinguish it from the situation here confronting us. Inasmuch as that case specifically points out the conflict in previous cases upon the subject, including many of those cited by either party here, we think it illogical to rely upon, and unnecessary to discuss, such previous cases. From the *Bogardus* case we derive certain basic considerations: That gift and

compensation for personal service are mutually exclusive concepts; that merely because the stockholders of the paying corporation "had benefited by the past services of the recipients, it by no means follows that the distribution was not a gratuity"; that it is material whether there was obligation or moral or legal duty to the recipients, or incentive of anticipated benefit, or whether full compensation for services of recipients had been made; and that intention governs, and the expressions used are of weight. After considering the *Bogardus* case and comparing its facts with those here involved, we are of the opinion that it controls us here, and that there was in this matter a gift. The factual parallel is striking. In both cases a later corporation paid. In both, the stockholders of both corporations were the same, but they had ceased to be stockholders in the corporation for which the employees had worked. In both cases the amounts paid were in the taxable years not claimed as expense deductions, or reported as income by the recipients. We attribute little weight to the fact that here, in 1929 and 1930, years before the payment here in question, deductions had been claimed and allowed (and claimed but not allowed in 1931 and 1932) for payments for pensions to others than the petitioner, made by a predecessor company, not immediately connected with the payor here involved. The fact that no such deductions were taken after 1932 is of equal effect with the fact that prior thereto they were claimed, and in two years allowed. Apparently both the corporation then controlling the reserve, and the respondent in 1929 and 1930, thought compensation was paid; and equally apparent there was a different view and intention by the later corporations, including Finance, which paid the petitioner here in 1942.[1] It is such later intent which is of prime importance here. Nor do we agree with the respondent that the *Bogardus* case is distinguished by the stipulation therein, and relied on, that "said payments were not made or intended to be made by Unopco corporation or any of its stockholders as payment or compensation for any services rendered or to be rendered or for any consideration given or to be given by any of said employees * * * to said Unopco corporation or any of its stockholders." Respondent views this language as an agreement there that settled the matter, while here no such agreement appears. We do not read the stipulation so broadly, for to ascribe to it the meaning desired by the respondent would be to say that the whole question of gift or compensation was there settled by stipulation. We construe the language in the light of its context, and think the Supreme Court so construed

---

[1] Since the stockholders on February 4, 1935, ratified earlier actions of officers and directors as to the reserve and payments, it may be that such payments were not gratuities, because not made by the stockholders. *Noel* v. *Parrott,* 15 Fed. (2d) 669.

it, as agreeing that the payments were not made or intended by Unopco, the payor, for services to it or its stockholders as such, and not to agree that there was not payment for services to a former corporation wherein the same people had formerly been stockholders. Had the latter been the meaning of the stipulation, we can not see why litigation would continue—as it did. That the agreement was not given the interpretation advocated by respondent is plainly indicated by the Court's language in the same paragraph to the effect that the recipients "never were employees of the Unopco Company or any of its stockholders"—though in fact such stockholders had previously been stockholders in the previous corporation of which most of the recipients had been employees. We conclude that the stipulation in the *Bogardus* case does not detract from its weight in this matter.

The respondent suggests that in the *Bogardus* matter the stockholders of the successor corporation made a single spontaneous "gift or honorarium" a few days after the organization of the new corporation, while here the setting up of a reserve of pensions and contingencies and the custom over a period of years of paying pensions and gratuities indicates design to compensate former employees for services; also, that there the payments were charged to surplus, while here, to a reserve. We are unable, in this, to see an essential or effective distinction. There appears equal spontaneity in both cases, and the fact that, in the instant matter the payments were made after a long period of time and successive changes in corporations, to us is, if anything, more indicative of gift than if payment had been made shortly after rendition of services. The fact that here reserves for pensions and for contingencies were set up in 1935, from which the reserve of Finance was, it is agreed, derived, is of little weight. The petitioner was never a pensioner, and it is stipulated that the reserve for contingencies set up in February 1935 had nothing to do with pensions. Prior to the $5,000 in 1942, the petitioner never received anything from such reserve. There seems no controlling or weighty difference between payment from the funds on hand in surplus in the *Bogardus* case, and payment in this matter from funds on hand in a reserve. The more important matter is the intent in making the payment. "* * * intention must govern * * *" the Court said in the *Bogardus* case, and gift could be intended from a reserve for that purpose, just as clearly as from funds not in a reserve. In the *Bogardus* situation it is specific that payments were "in recognition of valuable and loyal services of said employees," but that element did not cause conclusion by the Court that there was gift; yet here the setting up of a reserve, if it means anything, does not appear to indicate anything more than such recog-

nition of loyal services and intent ultimately to recognize them in a monetary way.

The respondent suggests also that in the *Bogardus* case the amounts paid were not based upon services rendered, while here the "so called gratuities" were apportioned according to the former employee's length of service and amount of compensation. This argument is peculiarly vulnerable in this case, in that the schedule based on length of service of employees with Standard to which respondent refers provides particularly that employees with service of less than ten years shall receive nothing—yet Newton, with less than ten years service with Standard, received $5,000. It is, however, further deprived of weight by the fact that the schedule applied only to payments granted by the president or treasurer, while the payment to the petitioner was granted pursuant to resolution of the board of directors. The distinction between the two kinds of disbursement was intentional, as shown by the fact that the letter of July 25, 1939, from Standcar to Finance, transferring the reserve and providing for the payments, after referring to the granting of gratuitous allowances by the president under the schedule of years of service with Standard, specifically provided "that any gratuitous allowances that do not come within said schedule be made only by authority of the Board of Directors." Newton's case. very obviously did not, and could not, come within the schedule, and was necessarily passed upon by the board of directors, not the president, and thus it appears that length of service had nothing to do with the disbursement to him.

The respondent, in addition, expresses the view that in the light of *Dobson* v. *Commissioner*, 320 U. S. 489, "it may well be that the *Dobson* case impliedly overrules the *Bogardus* case * * * and that the decisions of the Board of Tax Appeals and the Circuit Court of Appeals * * * have been, since 1943, good law." We see nothing in the *Dobson* case (so well known for its principles as not to require discussion) to justify the respondent's view, but, in any event, the *Bogardus* case was not expressly overruled, therefore the Supreme Court, and not we, should sustain the respondent's view if it so deserves.

The important elements of the *Bogardus* case, in addition to those above suggested, are that use of terms such as gift or honorarium indicates gift, not compensation; that the fact of disbursement to one never an employee of the disbursing company, or its stockholders, and the lack of obligation, legal or otherwise, to make such disbursement, and the lack of interest on the part of the paying corporation or its stockholders in the former employing corporation or its successor's good will and loyalty of its employees, weigh against the idea of com-

pensation payment by the disbursing company, and that recognition of past loyal services indicates merely the reason for making gifts. All of these elements, in our opinion, are present in this case. The intent to make a gift, rather than to pay compensation, appears both in the language used and in the evidence of Drake, the officer largely in charge of the matter, from the initial transfer of the funds in 1930, to the disbursing resolution on October 16, 1942. He was not a participant in the fund and so appears without interest or bias. He regarded the amounts as outright gifts. He said, referring to Standard's reorganization with Pullman, that it was a good trade, a nice price was received for the property, and the purpose "was nothing more or less than to just make some gifts to these people." This is in line with the entire record, and with the expressions "gratuitous allowance," "gratuities," and "gifts" used. It is in no essential matter different from the arrangement and intent found in the *Bogardus* case to indicate gift and not compensation. That case is not inapplicable on any ground that here the stockholders of Finance were stockholders in Pullman, through the reorganization in 1931, while in the *Bogardus* case the stockholders of Unopco had no stock in United Gasoline, to which all stock of Universal was sold. The respondent does not make the argument, but in any event it would offer no real distinction between the cases, for there is nothing here to indicate that stock in Pullman was still held by stockholders of Finance in 1942 when the payments here involved were made, or that they were interested in Pullman. Moreover, the payments were to former employees of Standard, not of Pullman; and Standard stockholders received only 560,000 shares out of 3,873,973 shares—a percentage so small as not to justify any idea that 12 years later Finance's stockholders would be so interested in Pullman as to compensate former employees who might conceivably (and outside this record) have entered the employ of Pullman.

Since the action of the board of directors of Finance was pursuant to authority of the stockholders, such cases as *Noel* v. *Parrott, supra*, have no application here. The fact that Securities and later corporations assumed liability for a pension reserve can have no weight here, since petitioner was never a pensioner and received disbursement, not from such a fund, but from a later fund for both pensions and gratuities, under circumstances convincing that to him there was gratuity. We conclude and hold that the $5,000 paid petitioner was a gift.

Reviewed by the Court.

*Decision will be entered under Rule 50.*