Elizabeth Robinson Matthews v. Commissioner.
Matthews v. Commissioner
Docket Nos. 55433, 57765.
United States Tax Court
T.C. Memo 1956-46; 1956 Tax Ct. Memo LEXIS 245; 15 T.C.M. (CCH) 204; T.C.M. (RIA) 56046; February 29, 1956
*245 Income or gift. - Amounts paid by corporations to widow of a deceased officer in the two years after death, held to be gifts to the widow and not includible in her income. James B. Garland, Esq., National Bank of Commerce Building, Gastonia, N.C., for the petitioner. Raymond Whiteaker, Esq., for the respondent. ATKINS
Memorandum Opinion ATKINS, Judge: The respondent determined deficiencies in income tax against the petitioner for the years 1951 and 1952 in the amounts of *246 $12,723.49 and $2,348.76, respectively, and an addition to the tax for the year 1952 in the amount of $394.14 for substantial understimation of estimated tax. The only issue, aside from the addition for underestimation, is whether amounts received by the petitioner in each year from the former employers of her deceased husband constituted taxable income to her or whether they were non-taxable gifts. [Findings of Fact] The facts were stipulated and are found as stipulated. The petitioner is the widow of the late James Houston Matthews, who died November 8, 1950. At the time of his death, and for many years prior thereto, he and the petitioner had been residents of Gaston County, North Carolina, and the petitioner has continued to maintain such residence. The petitioner filed Federal income tax returns for the calendar years 1951 and 1952 with the collector of internal revenue for the district of North Carolina. At the time of his death, and for a number of years prior thereto, James Houston Matthews was the general manager and secretary and treasurer of Matthews-Belk Company, a North Carolina corporation, operating a department store in the city of Gastonia, North Carolina. *247 His salary was $12,500 per calendar year. The agreement for that salary was his only contract for compensation for his services to that employer. All salary due him pursuant to that contract for the year 1950 or otherwise was paid either to him prior to his death or thereafter to his estate. Matthews-Belk Company, as well as James Houston Matthews and the petitioner, had used the calendar year as the basis for their income tax, and all operated on the cash method of accounting. Upon the termination of each calendar year, it had been the custom of Matthews-Belk Company for some years to hold a directors' meeting, as well as the annual meeting of stockholders, in the following January. At a meeting of the board of directors of Matthews-Belk Company held on January 18, 1951, the board voluntarily voted to pay the petitioner the sum of $20,000 which was paid directly to her February 5, 1951. At the time of this payment, the petitioner was not, and never had been an employee or an official of that company, and had performed no services for it. The company was not indebted to her or obligated to pay her any amount whatsoever and received no consideration from her for the payment. In January, *248 1950, the board of directors had voted to pay James Houston Matthews a bonus of $20,000, a like amount in January 1949, a like amount in January 1948 and an amount of $15,058.16 in January 1947. It was not the policy of the company to pay, and it had never paid, bonuses to any person other than officers and employees of the company, and it was not obligated to pay any bonuses to them. At the regular meeting of the board of directors of Matthews-Belk Company held on January 16, 1952, an additional $5,000 was voluntarily voted and paid to the petitioner for the year 1951. At the time of the payment of that amount the petitioner was not, and never had been an employee or official of Matthews-Belk Company and had performed no services for it. The company was not indebted to her or obligated to pay her any amount whatsoever and received no consideration from the petitioner for the payment. In January of 1950, James Houston Matthews, in addition to his employment as an officer of the Gastonia store, was elected by the various boards of directors to be secretary of the following companies at no stipulated salary: Belk-Schrum Company, Lincolnton, North Carolina
Belk's Department Store, *249 Gaffney, South Carolina
Belk-Matthews Company, Belmont, North Carolina
Belk-Matthews Company, Macon, Georgia
Belk-Matthews Company, Cherryville, North Carolina
At the annual meetings of the boards of directors of these companies, some compensation had been voted to James Houston Matthews in the past in recognition of any services he may have performed for the companies during the previous calendar year, but there was no contract for, or obligation to pay, compensation to him. At the annual meetings, all held on January 18, 1951, in Charlotte, North Carolina, the directors voluntarily voted to pay to the petitioner the following: Belk-Schrum Company, Lincolnton,
N.C.
$1,500.00
Belk-Matthews Company, Cherry-
ville, N.C.
1,000.00
Belk's Department Store, Gaffney,
S.C.
1,000.00
Belk-Matthews Company, Belmont
N.C.
750.00
Belk-Matthews Company, Macon,
Georgia
1,000.00
$5,250.00
At the time of payment of these amounts, the petitioner was not, and never had been an employee or an official of such companies, and had performed no services for them. The companies were not indebted to her or obligated to pay her any amount whatsoever, and received no *250 consideration from the petitioner for the payments. All the payments made to the petitioner were treated by the various stores making the payments as bonuses and deducted from the gross income of the stores. The actions of the various boards of directors in voting the payments to the petitioner were reviewed and approved by the stockholders of the several stores. The minutes of the meetings of the various boards of directors merely authorize the payments without explanation except that the $5,000 paid by Matthews-Belt Company to the petitioner was described as a "bonus" and the payment of $1,000 by Belk's Department Store of Gaffney, South Carolina, was described as "$1,000 paid to Mrs. J. H. Matthews salary due Mr. J. H. Matthews." The various payments were charged either to officers' salaries, accrued officers' salaries, or pay-roll accrued accounts on the companies' books. In her income tax returns for 1951 and 1952 and in letters accompanying them the petitioner called attention to the receipt of the aforementioned amounts from the various companies but stated that she considered them tax exempt. In her return for 1952 she computed her tax liability as $4,720.22, and showed *251 payment of estimated tax of $500. [Opinion] The respondent, in determining the deficiencies, included in the petitioner's taxable income the various payments received by her from her deceased husband's former employers. The petitioner contends that the several payments received by her from the stores in 1951 and 1952 were non-taxable gifts. The respondent seeks to sustain his inclusion of the amounts in income under the broad sweep of the provisions of section 22(a) of the Internal Revenue Code of 1939. We have held, in several recent cases, that payments made to the widow of a deceased employee by his former employer constituted gifts which are exempt from taxation under section 23(b)(3) of the Internal Revenue Code of 1939. Louise K. April, 13 T.C. 707; Alice M. Macfarlane, 19 T.C. 9; Estate of Arthur W. Hellstrom, 24 T.C. 916 (Aug. 19, 1955). In those cases we stated that the determination of the question of whether the payments constitute gifts depends upon the intent of the payor, relying upon Bogardus v. Commissioner, 302 U.S. 34. In each of those cases it was found that the widow rendered no services to the payor *252 and that the payor was under no obligation to make the payments. It was also shown that there was no obligation to pay the deceased husband any additional amount as compensation for past services. Thus, in each case the payments were voluntarily made by the payor. In the opinion in the Hellstrom case we said in part: "We think the controlling facts here which establish the payment in question as a gift are that the payment was made to petitioner and not to her husband's estate; that there was no obligation on the part of the corporation to pay any additional compensation to petitioner's husband; it derived no benefit from the payment; petitioner performed no services for the corporation and, as heretofore noted, those of her husband had been fully compensated for * * *" We find no material difference in the factual situation presented in those cases and that in the instant case. The substance of the stipulated facts is set out above. It is quite clear that the payments of $20,000 and $5,000 received by the petitioner in 1951 and 1952 from the Matthews-Belk Company were voluntarily made. The corporation was under no obligation to pay anything on account of services that had been *253 rendered by James Houston Matthews, as it was stipulated that all salary due him under his contract of employment was paid either to him prior to his death or thereafter to his estate. The petitioner rendered no services to the payor and the company was not indebted to her or obligated to pay her any amount whatsoever, and it received no consideration from her for the payments. Moreover, it is stipulated as to each payment that it was "voluntarily voted" by the directors. The action of the directors was approved by the stockholders. Similar facts existed with respect to the payments received by the petitioner in 1951 from the five other corporations. Compensation had been voted in prior years to the petitioner's husband for any services that he may have performed for those companies. However, it is stipulated that there was no contract for, or obligation to pay, compensation to him. The petitioner had not performed any services, the companies were not indebted to her, and they received no consideration from her. It is also stipulated that these payments were "voluntarily voted" by the boards of directors. The stockholders in each instance approved the payment. We conclude and find *254 as a fact that the amounts received by the petitioner were intended by the payors to be gifts. In reaching this conclusion we have taken into consideration the deceased husband's past association with the companies and the facts that the amounts were treated by the various payors as bonuses, were charged to salary or payroll accounts on the books, and were deducted from gross income. However, in view of all the evidence of record, we do not consider these factors as determinative of the payor's intention. See Arthur W. Hellstrom, supra; Bogardus v. Commissioner, supra.Accordingly, it is held that the amounts received by the petitioner from the various companies were gifts and that the respondent erred in including them in the petitioner's taxable income for the years 1951 and 1952. The case of Fisher v. United States (D. Mass.), 129 Fed. Supp. 759, cited by respondent, is distinguishable. There the employee had retired and the employer had voted to pay him a definite sum over the course of a year as compensation. When he died within the year, it was simply voted to pay the unpaid balance of that compensation to his widow. Our holding on the *255 principal issue does not relieve the petitioner of liability for the addition to the tax asserted for understimation of her tax for the year 1952. She has not shown that on her declaration she estimated the amount of tax in any greater amount than the $500 shown on her return as estimated tax paid. Her tax liability as computed by her, and without inclusion in taxable income of the payment of $5,000 received from the Matthews-Belk Company in 1952, was $4,720.22 This difference requires the addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939. Decisions will be entered under Rule 50.