Katherine F. Miller, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Joseph M. De Tota, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 94574, 94575. Filed December 7, 1962.

---

*Charles S. Wilcox, Esq.*, for the petitioners.
*Colin C. MacDonald, Jr., Esq.*, for the respondent.

OPINION.

Hoyt, *Judge:* The respondent determined deficiencies in petitioner Miller's income taxes for the years 1957, 1958, and 1959 of $94.19, $111.04, and $121.68, respectively. For the same years petitioner De Tota's deficiencies were determined to be $116.27, $122.18, and $119.33, respectively. The issue for decision is whether distributions from a Christmas fund to employees of a membership club were income to the recipients within the meaning of section 61(a) of the Internal Revenue Code of 1954.

All of the facts are stipulated by the parties, are so found, and are adopted by the Court as its findings.

The petitioner, Katherine F. Miller, was employed by the Genesee Valley Club as a bookkeeper. Petitioner, Joseph M. De Tota, was employed as a headwaiter by the club, and both petitioners filed their tax returns for the years 1957, 1958, and 1959 with the district director of internal revenue at Buffalo, New York.

The Genesee Valley Club was a membership corporation located in Rochester, New York. It was a social club which provided eating, dancing, and party facilities for its members and guests, and, in addition, had a sports annex for squash, badminton, indoor and outdoor tennis courts, bowling alleys, and outdoor swimming pool facilities.

As is usual in such social clubs, members and guests were prohibited from tipping the club's employees. Rule 7 of the Genesee Valley Club's rules provided as follows:

Rule 7. No member or visitor shall give money or any gratuity to an employee of the Club. The gratuity fund provides an opportunity for all contributions.

In accordance with a longstanding custom, the club invited voluntary contributions from its members to the Employees' Christmas Fund in 1957, 1958, and 1959. Each year a notice was sent to club members giving a list of all employees, their occupations, and their years of service, with the following message:

THE CHRISTMAS SEASON approaches and with it the Spirit of Giving. We are sure you will welcome the opportunity to make your annual contribution to the Employees' Christmas Fund. This Fund is maintained and augmented at this time and throughout the year in order to provide tangible recognition at Christmas time of the faithful and efficient service rendered by our employees.

Will you kindly designate the amount you wish to give on the enclosed card.

Board of Governors.

There was no requirement that a member contribute at all or in proportion to the amount of time he used the club or to the extent of his club bills. In the light of well-known human traits, however, there was probably a strong correlation in some instances between the amounts contributed and those factors. The contributions in the years in question varied as follows:

|  | 1957 | 1958 | 1959 |
|---|---|---|---|
| Total membership | 767 | 759 | 751 |
| Number who contributed | 533 | 552 | 565 |
| Number who did not contribute | 214 | 207 | 186 |
| Largest contribution | $125 | $450 | $140 |
| Smallest contribution | $2 | $2 | $2 |

The fund consisted solely of contributions by the members and was deposited by the club in a separate bank account. The amount distributed annually was determined by the amount remaining in the fund and not by reference to the contributions expected in the current year. Many employees who received distributions from the fund had no direct contact with club members, whereas others did. However, all employees received some portion of the total yearly contributions. The amount each received was determined by a formula which took into consideration the salary and length of service of the employee.

The rules of the house committee of the club relating to this fund and its distribution provided, in part, as follows:

J.—The solicitation of contributions for the Employees' Christmas Fund and their deposit in a separate bank account. The Chairman shall supervise the allocation and distribution of this Fund by the Manager, according to the following formula:

1. A Christmas bonus shall be paid to employees from funds subscribed by members of the Club. Payments are based on points earned by each employee. Points are credited to each full-time regular employee * * * on the basis of:

(a) *Length of employment*— * * *

(b) *Salary*— * * *

*       *       *       *       *       *

4. Notification of payment of bonus:

(a) Not later than December 10 of each year, the Chairman of the House Committee, after determining the point value, should send a letter to each employee outlining the basis for the bonus, and showing the number of points earned by him during the year, and the value per point. This letter should be an expression of appreciation and encouragement.

(b) Actual payment of the bonus should be made in check on December 15.

De Tota received $500.50 from the fund in 1957 and 1958, and $507 in 1959, while Miller received $448.50 in 1957, $455 in 1958, and $468 in 1959. The petitioners did not report these amounts as income.

We find from the stipulated facts and exhibits that the motives of the club and its members and the dominant reasons for the collection of, contribution to, and distribution of the club's Christmas fund were to reward petitioners for past services rendered and induce them to continue to render good service in the future.

We also find that the gratuity fund of the club was established under its rules as a vehicle for tipping club employees and that payments therefrom, computed in accordance with a point formula based upon years of service and the salary of the employees, were compensatory and in the nature of bonuses or tips. They were tangible acknowledgment and reward to employees of the club for services rendered and to induce good service in the future. In the language of the club's house committee rules they were in "appreciation and encouragement."

The sole issue is whether distributions from the Christmas fund constitute "income" to the Genesee Valley Club employees within the meaning of section 61(a) of the 1954 Code.

It is clear that payments for services, even though entirely voluntary, are compensatory in nature and constitute income taxable to the recipient. In holding end-of-the-year bonuses taxable to corporate employees in *Levey* v. *Helvering*, 68 F. 2d 401 (C.A.D.C. 1933), affirming 26 B.T.A. 889, the court said:

That it was voluntary, as we have seen, does not affect its taxability. The test is whether it was in payment of services. *Here it was a fixed policy of the company. It was not an isolated transaction confined to a single employee for a single year. Its amount was based on the value to the corporation of that particular officer's services to the corporation, for it was graduated on the salary schedule of the officers concerned. * * * A "gift" is a voluntary transfer of property by one to another without consideration. * * * Here there was consideration—indeed, a double consideration, viz., an acknowledgment and reward for services rendered in the preceding year, and a stimulus to continued effort and service in the ensuing year. Upon no other theory could the payments be justified, and it is not necessary nor proper to explore into an unknown field to find some other motive.* [Emphasis added.]

Likewise, in *Poorman* v. *Commissioner*, 131 F. 2d 946 (C.A. 9, 1942), the court affirmed this Court's decision (45 B.T.A. 73) that a severance bonus was taxable income. In that opinion it was pointed out that where the salary paid was the "measuring rod" for the fixing of the additional payment, this was some evidence of its compensatory nature.

If the Christmas bonuses here had been paid to petitioners by their employer, the club, there would appear to be no question of their taxability.

Likewise, however, tips paid by nonemployers to employees of others

who serve them constitute income to the recipients, taxable as such to them. *Roberts* v. *Commissioner*, 176 F. 2d 221 (C.A. 9, 1949), affirming 10 T.C. 581; *Sutherland* v. *Commissioner*, 32 T.C. 862 (1959). Current Internal Revenue regulations, applicable to the taxable years here involved, specify that tips and bonuses (including Christmas bonuses) are income to the recipients. Income Tax Regs., sec. 1.61–2(a)(1), promulgated by T.D. 6272, 1957–2 C.B. 18.

The petitioners here argue that since the club did not contribute to the Christmas fund, distributions to the petitioners did not come from their employer and cannot be compensation for services. They also contend that since many club employees, including one of the petitioners, rendered no service to the members, and since no payments were made at the time service was rendered by some employees, the payments cannot be deemed analogous to tips or for services rendered by club employees to members.

We cannot agree that members of a social club (a membership corporation such as the Genesee Valley Club) are not served by the entire staff of that club. Such a club is an intimate service organization and the whole staff, visible and invisible, serves the membership; the bookkeeper, the salad maker, and dishwasher serve members no less than the headwaiter. We feel that there is ample justification for the conclusion that in such circumstances distributions from a Christmas fund for club employeees is nothing more or less than the paying over of an accumulation of tips at year's end.

However, there are other reasons for holding, as we must, that the payments involved here are income to the petitioners.

In the recent case of *Commissioner* v. *Duberstein*, 363 U.S. 278, 285 (1960), the Supreme Court, in a brief and luculent summary of prior decisions dealing generally with the same elusive concept of "income" here involved, said:

if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41, it is not a gift * * *. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses." Robertson v. United States, 343 U.S. at page 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43. "What controls is the intention with which payment, however voluntary, has been made." Id., 302 U.S. at page 45. [Citations partially omitted.]

The Court then went on to say that the proper criterion should be "one that inquires what the basic reason for his conduct was in fact— the dominant reason that explains his action in making the transfer."

In the case at bar there were no doubt various reasons for the contributions and the resulting distributions. Certainly the Christmas season with its spirit and atmosphere was a factor, but it was not the dominant one. As stated in Rule 7 of the Club House Rules, the gratuity fund was the only opportunity to tip, and by the invitation of the rule itself the members deferred tipping until called upon for a contribution at the end of the year. As indicated clearly by the house committee rules, the yardstick for measuring the amount of the Christmas bonus in each case was length of service plus salary, and the motives or reasons to be stated in the letter of advice were "appreciation and encouragement."

The fact that some club members had no direct contact with some employees does not establish a gift, nor does it negate the compensatory nature of these payments. In the absence of any rapport between the members and these employees it is difficult to find a gift motive, particularly in the light of the club rules which clearly establish the double considerations of reward and stimulation to future service mentioned in the *Levey* case.

In the light of the whole record, the dominant reasons or motives for the contributions and distributions were obviously to reward prior faithful service of employees of the club to it and to its members, and to encourage the continuation of such service for the future. This leads inevitably to the conclusion that the payments constitute income to the recipients, taxable as such.

The petitioners' argument that a previously issued revenue ruling indicates a contrary conclusion is not persuasive to change that conclusion. While I.T. 3726, 1945 C.B. 63, appears to be somewhat analogous to the present case on the basis of the stated facts, it does not appear therein that salary plus length of service measured the amount of the bonus. On the contrary, the ruling states that the contributions are not based on any services performed by the employees. In any event, revenue rulings do not have the force and effect of Treasury Department regulations and are not binding on the Commissioner. In order to determine whether the Commissioner's determination here is proper or not, we should look to the statute and regulations. *Morrison Foundry Co.*, 1 B.T.A. 413 (1925); Cf. *Helvering* v. *New York Trust Co.*, 292 U.S. 455 (1934). Also, since that ruling was issued in 1945 there has been a considerable change in the atmosphere and complexion of the law as to the taxability of voluntarily made payments. Cf. *Commissioner* v. *Duberstein, supra;* and *Commissioner* v. *Lo Bue*, 351 U.S. 243 (1956).

We hold that the distributions to the petitioner-employees from the Christmas fund of the Genesee Valley Club were actually compen-

satory and in the nature of tips or bonuses. A payment of such a nature, which amounts to compensation for services, however voluntary and by whatever name it is called, is still taxable income.

*Decisions will be entered for the respondent.*