Eric Herman and Frances Herman v. Commissioner.
Herman v. Commissioner
Docket No. 3764-65.
United States Tax Court
T.C. Memo 1967-99; 1967 Tax Ct. Memo LEXIS 161; 26 T.C.M. (CCH) 477; T.C.M. (RIA) 67099; May 8, 1967
I. Hunce Naiman, for the petitioners. Sheldon S. Rosenfeld, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following income tax deficiencies against petitioners: Year
Deficiency
1960
$228.80
1961
343.00
1962
340.00
The issue for decision is whether certain amounts received by petitioner, Eric Herman, from a Christmas fund of a membership club were income to him under the provisions of section 61(a), Internal Revenue Code of 1954. The correct amounts of medical expense deductions depend upon the resolution of such issue. Findings of Fact Some of the facts have been stipulated by the parties and are hereby found accordingly. Eric and Frances *162 Herman are husband and wife who resided in Chicago, Illinois, at the time the petition was filed herein. They filed joint Federal income tax returns on the cash receipts and disbursements method for the years 1960, 1961, and 1962 with the district director of internal revenue at Chicago, Illinois. Eric Herman (hereinafter called petitioner) was employed by the Lake Shore Country Club as a bookkeeper from May 1959 through July 1963. The club is a tax exempt membership corporation located in Glencoe, Illinois. It is a social club which provides eating, dancing, and party facilities for its members and guests, and, in addition, has facilities for numerous sports activities. During the years 1960 through 1962 the House Rules of the club contained the usual social club prohibition against tipping club employees. The applicable House Rule provided: "It is contrary to the policy of the Club to give money or other grantuity to any employee at the Club." During the period from 1960 through 1962 the House Rules contained no statement concerning an Employees Christmas Fund or an Employee Bonus Fund, or its distribution. However, in accordance with a long-standing custom, the club invited *163 voluntary contributions from its members to the "Employee Bonus Fund" in 1960, 1961, and 1962. In each of these years a letter was sent to club members with the following message: In accordance with the annual custom, the Board is asking for your contribution to the Employee Bonus Fund for 1960. Many members have commented on the improvement in services rendered by club personnel. More people were served - most of whom were better satisfied - and there was a reduction in expense which made it possible to reduce your assessment. In deciding upon your contribution, please bear in mind the need of retaining a very loyal and hard-working staff, a goodly number of whom have been with us a long time. Many of the employees who participate in the Bonus Fund work behind the scenes. They, too, are important for a balanced and satisfactory operation. The Board is hopeful that you can increase your contribution this year. Prompt action is important too, for the proper and timely award of the individual bonuses will do much to strengthen loyalty and encourage our employees to return next year. Attached to the letter was a pledge card and a return envelope for the convenience of the members *164 in replying. There was no requirement that a member make any contribution or contribute in proportion to the amount of time he used the club or the amount of his club bills. In the years 1960, 1961, and 1962 the petitioner received, shortly before Christmas, distributions from this fund in the amounts of $1,000, $1,500, and $1,500, respectively. These sums were not included as wages on petitioner's W-2 (withholding) forms for such years. The stubs of the checks received by petitioner in 1960, 1961, and 1962 described the check as "XMAS GIFTS FROM MEMBERS." The corpus of the fund consisted solely of contributions made by the members and was kept separate from the rest of the club's funds. The amount distributed annually was determined by the amount contributed to the fund in that year. Some of the employees who received distributions from the fund had no direct contact with most club members, whereas others did. However, most, if not all, of the employees received some portion of the total yearly contributions. The amount each employee received was determined by a committee appointed by the Board of Governors of the club which was usually made up of the Chariman of the House Committee, *165 the Treasurer, and the President of the club. This committee was provided with a list of the employees and their duties. The factors considered by the members of the committee in determining the amount of the distribution to each employee were (1) length of service, (2) salary of the employee, (3) the prior year's distribution, and (4) the quality of the service rendered by the individual employee to the members during the year under consideration. The members of the committee intended to be as generous as they could within the limits of the funds they had available for distribution each year. Usually the most important man in the hierarchy of the club's employees, the manager, received the largest distribution from the fund, while those on the low end of the hierarchy would receive the smallest distributions. However, it was not unusual for an employee whose tenure was shorter than another's to receive a larger distribution, but this was usually because of the importance of the person's position. The purposes of the distributions from the fund were to provide a tangible acknowledgment to the employees of the club for prior services rendered, to encourage good service in the future, *166 to insure future loyalty, and to induce employees to return in the ensuing year. The petitioner received salary from the club during the years 1960, 1961, and 1962 in the respective amounts of $5,850, $6,100, and $6,750. He reported these amounts as income, but did not report the amounts received from the Employee Bonus Fund. The amounts received by the petitioner from the Employee Bonus Fund constitute taxable income to him in the years 1960 through 1962 and were not gifts. Opinion The issue is essentially factual. Cf. Commissioner v. Duberstein, 363 U.S. 278 (1960). Petitioner argues that the distributions he received from the so-called Employee Bonus Fund were gifts and therefore not includable in his gross income for the years in question. By contrast, the respondent maintains that the distributions were compensation for past services performed and to encourage future loyalty and good service. We agree with the respondent. The facts established by this record convince us that the intention of the employer (Lake Shore Country Club) was not to make Christmas distributions based upon detached and disinterested generosity out of affection, respect, admiration, *167 charity or like impulses. The intention was, in fact, to make payments in return for past services rendered and future services to be rendered. In principle, as well as factually, this case is similar to Katherine F. Miller, 39 T.C. 505 (1962), aff'd 327 F. 2d 846 (C.A. 2, 1964), certiorari denied 379 U.S. 816 (1964), and is controlled by it. We think the amounts received by the petitioner from the Employee Bonus Fund of the Lake Shore Country Club were compensatory in nature. "A payment of such a nature, which amounts to compensation for services, however voluntary and by whatever name it is called, is still taxable income." Katherine F. Miller, supra at p. 511. The petitioner's contention that I.T. 3726, 1945 C.B. 63, indicates a contrary conclusion, because of reliance upon it, is not persuasive. As we said in Katherine F. Miller, supra at p. 510: While I.T. 3726, 1945 C.B. 63, appears to be somewhat analogous to the present case on the basis of the stated facts, it does not appear therein that the salary plus length of service measured the amount of the bonus. On the contrary, *168 the ruling states that the contributions are not based on any services performed by the employees. In any event, revenue rulings do not have the force and effect of Treasury Department regulations and are not binding on the Commissioner. In order to determine whether the Commissioner's determination here is proper or not, we should look to the statute and regulations. Morrison Foundry Co., 1 B.T.A. 413 (1925); Cf. Helvering v. New York Trust Co., 292 U.S. 455 (1934). Also, since the ruling was issued in 1945 there has been a considerable change in the atmosphere and complexion of the law as to taxability of voluntarily made payments. Cf. Commissioner v. Duberstein, supra; and Commissioner v. Lo Bue, 351 U.S. 243 (1956). Accordingly, we sustain the Commissioner's determination. Decision will be entered for the respondent.