GEORGIA S. WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83298. Promulgated December 2, 1937.

*William Cogger, Esq.*, and *Eugenio M. Fonbuena, Esq.*, for the petitioner.

*Dean P. Kimball, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The Commissioner treated the $2,982 as additional compensation for prior services and included it within petitioner's taxable income under Revenue Act of 1932, section 22 (a). She urges that the amount was a gift and therefore excluded from gross income under section 22 (b) (3). This she derives from the fact that the Philippine statute is entitled "An Act to Provide for the Payment of Retirement Gratuities to Officers and Employees of the Insular Government Retired from the Service as a Result of the Reorganization or Reduction of Personnel Thereof", and in terms provides that such an employee as she "shall be entitled to a gratuity as follows:", the "gratuity" provided being measured by the length of service and the rate of pay.

Whether the amount received by the petitioner is subject to United States income tax depends upon whether it is covered by the United States revenue act. That statute taxes amounts received as compensation for services, and if the amount here in question is within the meaning of that language in United States law, it may not be excluded because of any label placed upon it by the Philippine Legislature. This is true as to a conflict between state nomenclature and a Federal revenue statute, as well as a conflict between a characterization under the law of a foreign government and that under our revenue law. So the inquiry must be not with regard to what the payment has been called in the Philippine statute, but what in our law it shall be called.

In *Bogardus* v. *Commissioner*, 302 U. S. 34, the question was described as "whether a sum of money received by the petitioner * * * was 'compensation' subject to the federal income tax, or a 'gift' exempt therefrom." A conclusion that the payment was additional compensation for services was held to be "a conclusion of law or at least a determination of a mixed question of law and fact", and not such a finding of fact as is conclusive if supported by evidence. The statutory categories of compensation and gift were held to be mutually exclusive, and it was said that if the sum in question "be in fact a gift, that is an end of the matter." "A *claim* that it is a gift presents the sole and simple question whether its designation as such is genuine or fictitious—that is to say, whether, though *called* a gift, it is in *reality* compensation. To determine that

question we turn to the facts." The facts in that case included the lack of a contractual relation, past or present, between the parties, no legal obligation or moral duty of the payer to the recipient, nothing to support an inference that the payment was inspired by a desire for good will or loyalty, and the expression used by the payer to describe the amount was "gift or honorarium", indicating an intent to be generous rather than merely belatedly just. It was held that because the payer "had benefited by the past services of the recipients, it by no means follows that the distribution in question was not a gratuity. It nowhere appears in the record that full compensation had not been made for these services. There would seem to be a natural inference to the contrary; and the inference is made determinate by the stipulated fact that no one was under any obligation, legal or otherwise (and this would include a moral obligation, however slight) 'to pay any additional compensation.' There is no ground for saying that the benefit received and the compensation then paid for it were not equivalents." Any implication from the use of the word honorarium was put aside because the word had been "loosely and inaccurately used." "A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient."

In the present case, there is no evidence from which intent of the payer can be inferred except the terms of the Philippine statute, and this is also the only source from which an obligation, legal or moral, can be derived. The testimony consists entirely of petitioner's statement that she was employed by the Philippine Government for thirteen years, that her position was discontinued, and that she chose to take a lump sum of $2,982 instead of monthly payments of $83.23 for a stated time.

The Philippine statute was approved February 21, 1933, relates in its title to the "payment of retirement gratuities to employees retired from the service as a result of reorganization", and provides that whenever it is necessary to abolish a position or retire an employee he "shall be entitled to a gratuity as follows." Thus there is created a legal obligation inuring to the benefit of each employee retired. Were it not for the use of the word "gratuity" to describe it, no one could doubt that the payments were a commonplace system of retirement pay, inspired not by spontaneous generosity, but by a recognition of services rendered. The variation in amounts is made to depend on length of service and salary earned. In this there is little of the nature of a gratuity. True, the Philippine Legislature was not obligated to enact the statute which gave petitioner her right; but this did not serve to stamp the amount received as a gift. It was a statutory method of paying her an additional amount for her service or its discontinuance. *Levey* v. *Helvering*, 68 Fed. (2d) 401.

In our opinion, the amount was not a gift, but compensation for services, and the Commissioner correctly ruled it to be within the petitioner's gross income and subject to tax.

*Judgment will be entered for the respondent.*