RAFAEL A. BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT, Respondent; MARÍA ALVAREZ WIDOW OF OBÉN, Intervener.

No. 214. Argued June 10, 1949.—Decided November 15, 1949.

468

*Vicente Géigel Polanco, Attorney General* and *J. C. Santiago Matos, Assistant Attorney General,* for petitioner. *Charles R. Hartzell* and *José L. Novas* for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR. delivered the opinion of the Court.

The question for decision here is whether a sum of money received by the intervener, during 1944, from Luce & Co. or from Central Aguirre Sugar Co., *S. en Co.*,[1] constitutes "compensation," under § 15 (*a*) of the Income Tax Act, which defines the term "gross income" as including, among others, "compensation for personal service . . . and income . . . from any source whatever," or "gift," under § 15 (*b*) (3) of the same Act, which provides that said term does not include, among others, "The value of property acquired by gift . . "

The facts involved are the following:

Don Carmelo Obén had been an employee of Central Aguirre Sugar Co., *S. en C.* and of Luce & Co. for more than twenty-five years and when he died, the Board of Directors

---

[1] Even though it was stated in the evidence that it was from Central Aguirre Sugar Co., *S. en C.*, in the intervener's brief it is insistently said that it was from Luce & Co. Whether it was one or the other, the question involved does not vary.

of the Central, taking into consideration the deplorable economic condition in which the widow was left—the intervener in the case at bar—decided to pay her a pension, which amounted to $200 monthly during the year involved in this action.

On April 15, 1947, the Treasurer of Puerto Rico, considering that the amount of money received by the intervener was part of her gross income, notified her a deficiency amounting to $297.89 for the taxable year which ended on December 31, 1944. Feeling aggrieved, she complained before the Tax Court, which decided that the money received by the íntervener was a gift, not constituting, therefore, part of her gross income.

The Treasurer of Puerto Rico contends in this action that the sum of money involved herein was paid with the intention of compensating, forming part of the taxable income, and that in any event, it was not a gift since it was not made pursuant to the provisions of § 574 of the Civil Code, 1930 ed., regarding gifts.[2]

The only evidence presented by the intervener before the Tax Court was the testimony of Mr. Juan G. García, which was briefly set forth in the opinion of the court in this way:

". . . He deposed that he is comptroller of the Central Aguirre Sugar Co. He met Carmelo Obén when the latter was an employee of said sugar enterprise. Central Aguirre had no pension plan whatsoever for its employees at the time of the death of Carmelo Obén, which occurred prior to 1946. When Carmelo Obén died the officials of the Central were confronted with a widow without any means of support, for which reason said company began giving her a monthly allowance of $250

---

[2] Section 574 provides:

"Gifts of personal property may be made verbally or in writing.

"The verbal one requires the simultaneous delivery of the thing bestowed as a gift. In the absence of this requisite the gift shall produce no effect if not made in writing and if the acceptance does not appear in the same manner."

during the first two years. Subsequently the pension was reduced to $125 monthly. Those items were submitted annually to the Board of Directors of Central Aguirre for approval, and if disapproved, its payment would have been discontinued. It was a practice to do this one month prior to the expiration of the term for which the expenditure had been approved, for the pension was not for a fixed term. Nor was there any pension plan whatsoever for the employees.

"Upon being cross-examined he stated that every month Central Aguirre sends a check to the appellant to cover the pension referred to. Don Carmelo Obén worked for Central Aguirre for a period of from 25 to 30 years, and at the date of his death he was an employee of said enterprise. The pension referred to was granted to the petitioner one or two months after Don Carmelo's death. Central Aguirre deducts in its books the payments referred to as general administration expenses."

On his part, the Treasurer only offered as evidence a letter from the intervener, dated November 8, 1946, which reads thus:

"Sir:

"In answer to your letter of September 27, 1946, regarding the pension I receive from Luce & Co., S. en C., I wish to inform you that said pension has been granted to me in consideration of the fact that my husband was an employee of said company during many years and until the time of his death.

"In accordance to what I have been informed, payments received in that concept do not constitute net taxable income. (Mertens, 1942 ed., Vol. 1, p. 392, footnotes 4 and 5.)"

The Tax Court based its decision on the following findings: (1) that the pension received by the intervener did not constitute income, inasmuch as she has never rendered—either before or after her husband's death—personal services, or otherwise, to Central Aguirre Sugar Co.; (2) that Central Aguirre, at the time of Carmelo Obén's death, had no pension plan whatsoever for its employees and, therefore, the intervener could not have been a third party beneficiary of any pension plan by virtue of the relations of employer and employee which existed between her husband and the

company, and (3) that the fact that Central Aguirre deducted the amount of the payments made to the intervener as administration expenses ". . . can not affect the inescapable reality that they constituted a gift and not a payment in compensation for personal services really 'rendered." It made no pronouncement whatever as to whether with regard to the pension received by the intervener, the requisites for gifts under the Civil Code should have been complied with.

■ In regard to the third ground set forth by the Tax Court it will be sufficient to say that the question whether the payments made to the intervener are deductible or not by the company as administration expenses is not, by itself, determinative of the facts that said payments constitute a taxable compensation as income of the intervener. That fact alone is not sufficient to show the true intention of the company in making the payment, even though it may constitute an element of evidence thereof. 1 Mertens, Law of Federal Income Taxation, § 8.08, at p. 388 and cases cited in footnote 84; *Bogardus* v. *Commissioner*, 302 U. S. 34 (1937). We are not considering or deciding now whether or not Central Aguirre Sugar Co. was entitled to make said deduction—which question may or may not rise in the future—but we are merely deciding that the Tax Court did not err as to the third ground set forth. Nor did it err as to the first two, since the evidence showed that the intervener has never rendered personal services of any kind whatsoever to the company and it was proved, besides, that the company had no pension plan whatever for its employees nor was there any contractual obligation to pay a pension to their widows.

■ The determining fact as to whether in a case of this nature there exists a compensation which constitutes income under the law, is the intention of the parties and especially of the party making the payment. As stated by Mertens:

". . . the intention with which the payment has been made controls. If the payment is intended to represent payment, whether designated as compensation or otherwise, for services rendered either in the past, present or future even though full acquittance has been previously made through other payments, the amount received would seem to represent taxable income to the recipient. If on the other hand the payments are made to show good will or a mere kindliness towards the recipients and are not intended as a recompense for services rendered, then the payments represent gifts and should be exempt. . . ." Op. cit., p. 387.

The determination of the intention of the party in making the payments involves "a conclusion of law or at least a determination of a mixed question of law and fact. . . subject to judicial review," *Bogardus* v. *Commissioner, supra*, p. 39, and even the dissenting opinion in said case agrees that "What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt."

The same rule followed to determine the distinction between compensation and gift, is applicable to pension cases. To this effect Mertens says:

". . . Where the pension is paid as a result of a uniform plan offered as an inducement to the employee to enter the service of the employer, it would seem to represent compensation even though granted without a legal or moral compulsion. . . . Where, however, the payments are made without any agreement to render services and without in fact any services having been rendered, the payments are not taxable to the recipient. This result has been reached as to payments made to a widow of deceased officer,[4] . . ." Op. cit., p. 392.

---

[4] "IT 3329, CB 1939-2, p. 153; OD 1017, CB 5, p. 101. . . ."

From the case of OD 1017, cited in the footnote in Mertens, the following is copied in the opinion of the Tax Court:

"A corporation paid to the widow of a deceased officer a certain amount equal to the salary he would have earned in two months. The payment was without consideration, a gratuity voted as a compliment to the deceased. It is held that the payment does not constitute taxable income."

For an extensive discussion of the question involved herein see "Payments to Widows of Deceased Employees" by William P. Oberndorfer, 25 Taxes, Pamphlet 8, p. 711 (August 1947), in which the author, after referring to case O.D. 1017, *supra*, and others, affirms that the decisions are conflicting and that often it is difficult to understand the precise theory on which they are based, but this notwithstanding, he concludes, at p. 719, that: ". . . it would seem that so long as payments are in fact voluntary, are not made pursuant to an agreement or 'enforceable' plan and are not in fact compensation for services rendered, they probably will be construed as tax-free gifts. . . ." There comes into play here what the author considers the doctrine of an "enforceable obligation," that is, that any payment to which a widow has an enforceable vested right by virtue of a contract or pension plan, is taxable as her income. This result was reached in *Flarsheim* v. *United States*, 156 F. (2) 105; *Varnedoe* v. *Allen*, 158 F.(2) 467 (C.C.A. 5, 1946), cert. denied in 330 U. S. 821; *Sutro* v. *U. S.*, 42–2 USTC, § 9523, cited by Oberndorfer, op. cit., footnote 39 and in the text of his article, p. 717 wherein it was decided that "The general rule is that a plan of this sort (insurance plan, premiums paid by employer) creates an enforceable obligation on the part of the employee or beneficiary, even though the plan states that it is voluntary" and the case of Bogardus, *supra*, was distinguished, it being said: " 'There are two distinguishing features about this case: (1) The new company did not deduct the gifts or bonuses as expenses for income tax purposes.

(2) These were not enforceable obligations. The Supreme Court indicated that if these two elements had been present its decision might have been different.' "

The proven facts in the case at bar show that although Central Aguirre Sugar Co. deducted the payments made to the intervener as administration expenses, the intention of the company in making them was an act of mere generosity towards the widow of an old employee who had been left in a precarious economic condition; that the company did not act by virtue of a contract with the employee or of a pension plan established as an attraction for its employees and as a consequence of which an enforceable obligation would be created in favor of the intervener herein. On the contrary, the payments were subject to be reduced, as they were reduced, or to cease completely when the company deemed it advisable. The fact that the intervener wrote to the petitioner stating that the pension had been granted her in consideration of her husband's long time position in said company and until his death, does not imply, as the petitioner argues, that said pension constitutes an additional compensation for the services of the employee. As stated in *Bogardus* v. *Commissioner, supra*, at p. 44:

"Some stress is laid on the recital to the effect that the bounty is bestowed in recognition of past loyal services. But this recital amounts to nothing more than the acknowledgment of an historic fact as a reason for making the gifts. A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient."

It should be noted that in said case the bonus was paid directly to the employees of a former corporation, by a new one which had acquired all its stocks, and not as in the case at bar, to the widow of an employee.

The Tax Court did not err in deciding that the payments made by the company to the intervener did not form part of her gross income for 1944, but were a gift which is exempt

from income tax. It did not err either in not mentioning § 574 of the Civil Code, *supra*, for insofar as the donor company has not challenged the gift after being aware that the donee had accepted and cashed the checks which the company sent her monthly, the gift was consummated between them. Sections 565 and 571 of said Code. The evidence shows that the gift in this case was made in writing, that is, there was the agreement of the directors of the company approving the payments by monthly checks and the acceptance was also in writing upon the intervener endorsing and collecting the checks monthly. The example as illustrated by Manresa in commenting § 632 of the Civil Code of Spain, equivalent to our 574—V Manresa, Fifth Edition, p. 117—to the effect that if the donor orders his banker to give a certain sum to the donee, it does not constitute a verbal gift since the simultaneous delivery of the thing bestowed as a gift does not exist, is not applicable to the facts of the present case. Here the written agreement of the donor existed and, rationally interpreting the scope of § 574, *supra*, the acceptance by the donee was also in writing, in endorsing and cashing the checks, the donor being notified upon receipt of said checks already cancelled.

The decision appealed from will be affirmed.

Mr. Chief Justice De Jesús and Mr. Justice Negrón Fernández did not participate herein.