Estate of James J. Doumakes, Deceased, Maria J. Doumakes, Executrix, and Maria J. Doumakes v. Commissioner. Maria J. Doumakes v. Commissioner.
Estate of Doumakes v. Commissioner
Docket Nos. 93320 and 93322.
United States Tax Court
T.C. Memo 1963-249; 1963 Tax Ct. Memo LEXIS 94; 22 T.C.M. (CCH) 1247; T.C.M. (RIA) 63249; September 13, 1963
John O. Paulston for the petitioners. Paul G. Wilson for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined the following deficiencies in income taxes: Taxable
Docket No.
Year Ending
Deficiency
93320
December 31, 1956
$1,704.50
93322
December 31, 1957
$9,605.69
93322
December 31, 1958
$5,575.44
*95 Petitioner in Docket Number 93322 as serts an overpayment of such taxes for the year 1957 in the amount of $57.60. Certain adjustments have been conceded, and the sole remaining issue is whether certain payments made to petitioner Maria J. Doumakes by Doumak, Inc., in the years in question were gifts and for that reason not includable in income for Federal income tax purposes. Findings of Fact Some of the facts have been stipulated and are so found. During the years in question James J. Doumakes (James) and Maria J. Doumakes (Maria) were husband and wife. James died on March 31, 1956. At the time of such death James and Maria resided in Los Angeles, California, where Maria has continued to reside. At all times from on or about May 7, 1956, until her discharge on October 30, 1958, Maria was the duly appointed, qualified, and acting executrix of James' estate. A joint income tax return was duly filed on behalf of James, deceased, and Maria for the calendar year 1956, and individual income tax returns were duly filed by Maria (hereinafter sometimes referred to as petitioner) for the calendar years 1957 and 1958, respectively, with the district director of internal revenue *96 at Los Angeles, California. At the time of his death James was the president of a corporation now known as Doumak, Inc. (hereinafter referred to as the Corporation). The Corporation was organized as Doumak's Marshmallow Co., Inc., under the laws of the State of California, on April 26, 1944, to take over and continue the business of manufacturing confections, principally marshmallows, theretofore conducted by the Doumak (sometimes spelled Doumakes) family. At the time of his death, James and petitioner owned as community property 1366 shares of the 2211 issued and outstanding shares of the Corporation. The remaining 845 shares of such stock were held by their adult children, Alexander J. Doumak, John J. Doumakes, Robert M. Doumakes, Arthur A. Doumakes, and Frances D. Scofield. Also at that time the directors of the Corporation were James, Maria, and three of their adult children John J. Doumakes, Alexander J. Doumak, and Frances D. Scofield. The officers in addition to James were Alexander J. Doumak, vice president, and John J. Doumakes, secretary and treasurer. At the time of his death James was receiving a salary of $2,000 per month, in full compensation for his services to *97 the Corporation. There were no amounts owing to him by the Corporation on account of his services at the date of his death, and the Corporation did not have any plan or practice of making payments to widows of deceased officers and had never made any such payments. Petitioner received the proceeds (probably in the amount of $10,000) [1] of a life insurance policy upon the death of James. Aside from that she had no unfettered funds of her own for living expenses immediately after the death of her husband, as all her other assets consisted of her community property interest in the assets of James at the time of his death, and were included in his probate estate pursuant to California law. The estate consisted in large part of the shares of Doumak, Inc., lacked liquidity, and no widow's allowance was paid. The cash in the estate at the time of James' death was as follows: Currency
$ 20.00
Commercial checking account
5,203.54
Savings account
207.60
$5,431.14
Additional cash receipts of the estate during *98 the period of the first and final account of the executrix thereof were as follows: Liquidation of Vesta Petroleum Com-
pany stock
$ 400.00
Redemption of 195 shares of Doumak,
Inc., stock
30,127.50
Life insurance proceeds payable to
estate
10,000.00
Rentals
8,470.00
Dividend on Vesta Petroleum Com-
pany stock
15.00
Total
$49,012.50
From the above $54,443.64 total cash of the estate, cash disbursements totaling $38,144.90 were made and $1,030 was paid as closing expenses. This left $15,268.74 in cash available for distribution as of October 15, 1957, the end of the accounting period. Upon final distribution of the estate on or about January 8, 1958, one-half thereof was distributed to petitioner as her community property interest therein. The other half was distributed to a trust of which petitioner was the life income beneficiary. She was not entitled to any amounts of cash derived from conversion of principal of the trust. This trust was not funded or effective until the final distribution of the estate. The trustees were John J. Doumakes, Alexander J. Doumak, and Frances D. Scofield. Prior to her husband's death, petitioner and James had been *99 using substantially all of his salary of $2,000 per month for living expenses. Although petitioner did not become destitute upon the death of her husband, she felt she did not have sufficient funds to meet her needs. Petitioner discussed her financial situation with her children many times, asking them how she was to live and telling them she needed money. The children recognized that she did not have sufficient funds shortly after their father's death to live in the manner to which she was accustomed. They agreed that something should be done to provide their mother with funds, whereupon, John J. Doumakes, who had acted as an intermediary in assisting petitioner during discussions with the attorney for the estate (hereinafter referred to as the attorney), approached him for advice. As a result of his discussions with the attorney, John J. Doumakes understood that the Corporation could make payments to petitioner in an amount equal to the salary of the decedent for 2 years, that these payments need not be treated as taxable income to her, and that the Corporation could take deductions for the payments. On August 28, 1956, the shareholders of the Corporation, including petitioner, *100 held a special meeting. They elected Robert M. Doumakes a director and adopted the following resolution: RESOLVED, that the directors of this company are hereby authorized, empowered and directed to pay to Maria Doumakes, wife of the deceased James Doumakes, the sum of $48,000.00, said amount being equivalent to two years of the salary that James Doumakes was receiving at the time of his death, said payment being a gratuitous expression of the appreciation and thanks which the corporation wishes to extend to the widow of James Doumakes for his long and untiring efforts on its behalf. Said amount to be paid to said Maria Doumakes in such installments and at such times as to the Board of Directors may seem most appropriate and propitious. The directors, including petitioner, met the same day and elected John J. Doumakes as president and Robert M. Doumakes as secretary and treasurer, and fixed salaries of $1,500 each per month for the president and vice president and nothing for the secretary and treasurer. They also adopted the following resolution: RESOLVED, that the Treasurer of this corporation be, and he hereby is, directed to pay to Maria Doumakes, widow of James Doumakes, *101 former President of this corporation, in appreciation of and thanks for the long and untiring efforts of said James Doumakes on behalf of the corporation, the sum of $48,000.00, said sum to be paid at the rate of not more than $2,000.00 per month, the Treasurer being authorized to pay less than that amount at any time he deems the cash position of the corporation and the calls which he expects to be made upon it warrant such reduction. Said payments, may in the Treasurer's discretion be made to commence at any time after March 31, 1956. The intention of those voting for the resolutions, which had been prepared in the attorney's office, was to get money to petitioner, pursuant to their understanding that this could be done without tax consequence to her. The Corporation had commenced making payments to petitioner on August 24, 1956. Such payments made totaled $10,000 in 1956, $24,000 in 1957, and $20,000 in 1958. When it was discovered that $6,000 had been paid petitioner in excess of the amount authorized by the Corporation, said $6,000 was returned by her to the Corporation. On its income tax returns, the Corporation claimed deductions designated "Voluntary Payments to Widow *102 of Officer" as follows: 1956
$10,000
1957
$24,000
1958
$20,000 This was done pursuant to the advice of the attorney. No payroll deductions were made from said payments and the payments were not reported by the Corporation on its payroll tax returns or its employees' compensation insurance reports. The Corporation had a history of having paid no dividends on its outstanding stock. The redemption of 195 shares of the Corporation's stock from the estate of James J. Doumakes was made pursuant to the provision of the Internal Revenue Code which makes it possible in certain situations to redeem stock at capital gain rates in order to pay death taxes. The possibility of making a loan to petitioner or of either the Corporation or petitioner's children buying some of her shares of stock in the Corporation was not considered by the family as a method of providing petitioner with funds. Respondent included in petitioner's taxable income for the years 1956, 1957, and 1958 the amounts of $5,000, $24,000, and $14,000, respectively, as "an employer's death benefit." Respondent has granted a $5,000 exclusion as a partial offset against the $10,000 received from the Corporation *103 in 1956, pursuant to section 101(b) of the Internal Revenue Code of 1954 in making his determination of deficiency, and made certain adjustments with respect to the retirement income credit, neither of which matters is in dispute. The payments made to petitioner by the Corporation in 1956, 1957, and 1958 were not intended as, and were not, gifts. Opinion Petitioner asserts to be erroneous respondent's determination that $43,000 of the amounts received in 1956, 1957, and 1958 from the Corporation by petitioner subsequent to the death of her husband was includable as additional income to her. Petitioner relies, in support of her contention, on an assertion that the payments in question constituted gifts and are not includable in income for that reason. [2]
Both parties cite Commissioner v. Duberstein, 363 U.S. 278 (1960) as the controlling authority for the decision of this case, and, as petitioner observes, the overriding principle affirmed in Duberstein is that the question whether a given transfer amounts to a gift is a question of fact to be decided upon a case-to-case basis after *104 examination of all relevant factors. The burden of proof is, of course, upon petitioner to establish that the payments involved were gifts. We cannot conclude that they were. Petitioner argues that it has been established by the record that the dominant reason for the payments was petitioner's need for funds after the death of her husband, and that it must be concluded from that that the payments were gifts. Regardless of the actual extent of petitioner's need, it is clear that the payments were made because petitioner and her children believed she had a need for money at that time, but that alone does not lead inevitably to the conclusion that they were gifts. As the Court stated in Commissioner v. Duberstein, supra, at 285-286: * * * the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43. "What controls is the intention with which payment, however voluntary, has been made." Assuming, as petitioner relies, that the intention of the corporate payor in this case is to be determined from the intention of its shareholders and officers, who authorized *105 the payments, we cannot say that a gift was intended. Viewing the record as a whole, we have found the intention in this case merely to have been to get money to petitioner, to provide her with needed funds. This purpose, even coupled with lack of consideration for the payments, is not sufficient to establish "gift" in the statutory sense. See Commissioner v. Duberstein, supra. This is simply the case of a family consisting of a widow and her children seeking a source of funds for the support of the widowed mother upon the death of her husband, and deciding, for reasons unknown, that the family's incorporated business was the best source for those funds. The testimony of the witnesses presented has not convinced us that there was an intention to make a gift rather than just a transfer, and even the formal corporate resolutions do not indicate that a gift was intended. Consequently, the payments made by the Corporation are includable in petitioner's income, pursuant to section 61(a) of the Internal Revenue Code of 1954. We consider the fact of petitioner's and her family's ownership and control of the corporate transferor to be an important *106 factor in this case. See Lucile McCrea Evans, 39 T.C. 570 (1962). Certain of the established facts raise the question of whether the payments here in issue constituted dividends to petitioner, and petitioner has made no effort to negate any of the implications created by these facts. It is not necessary for us specifically to pass on that question, however, however. It is sufficient to state that we cannot conclude that the payments were intended as gifts. Because of conceded adjustments, Decision will be entered under Rule 50. Footnotes
1. There is some indication in the record that this amount was $6,000 rather than $10,000. Petitioner concedes that this difference is insignificant.↩
2. See sec. 102, I.R.C. 1954↩.