FIRST NATIONAL BANK AND TRUST COMPANY OF MINNEAPOLIS AS REPRESENTATIVE OF THE ESTATE OF EDWARD STARR JUDD, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91229. Promulgated January 19, 1939.

*John W. Windhorst, Esq.*, and *Leland W. Scott, Esq.*, for the petitioner.

*W. R. Lansford, Esq.*, for the respondent.

## OPINION.

OPPER: The question is whether insurance on the life of petitioner's decedent under a so-called group life insurance policy was "taken out by the decedent upon his own life",[1] with the consequence that its proceeds should be included in his estate. It is clear from our decision in *M. W. Dobrzensky, Executor*, 34 B. T. A. 305, that in order to fall within that language it is not necessary that the policy be procured by the decedent personally nor that he pay the premiums directly.[2] Accordingly, the facts that the policy was applied for by the Mayo Clinic, the organization with which decedent was associated, rather than by decedent, and that the premiums were paid by it are not conclusive. The question still remains whether the premiums were paid "indirectly"[3] by the decedent either on the theory that they were additional compensation to him, which was used by the Mayo Clinic to pay premiums for his account, or that a part of his distributive share in the net profits of a partnership or association was applied to the payment of the premiums.

---

[1] Section 302 (g), Revenue Act of 1926.

[2] See also *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704; 711, where the court said: "The manifest purpose of that provision is to include in the decedent's estate for purposes of the tax the proceeds of all insurance on his life receivable under policies acquired through expenditure by him." This case was cited with approval in *Lang* v. *Commissioner*, 304 U. S. 264.

[3] Regulations 80 (1934 Ed.), art. 25: "Insurance is deemed to be taken out by the decedent in all cases, whether or not he makes the application, if he pays the premiums either directly *or indirectly.* * * *" (Emphasis added.) The Supreme Court in *Lang* v. *Commissioner*, 304 U. S. 264, held a similar regulation to have been "approved by Congress."

Because of the somewhat involved history of the Mayo Clinic it may not be entirely clear whether the premium on the policy which was in effect at decedent's death was paid by an organization more nearly analogous for tax purposes to a partnership on the one hand or to a corporation on the other. From 1925, when the policy was originally issued, to 1933, decedent and his associates were admittedly partners and filed income tax returns as such. As of January 1, 1933, the articles of association were amended slightly and thereafter returns were made as an association taxable as a corporation. They were so accepted by the respondent. As pointed out by petitioner, the policy in question being a term insurance policy, renewable annually, the specific contract which was in effect at decedent's death was made within the period when corporate returns were being filed. But the fact that an association may be taxable as a corporation under the specific provisions of the revenue act would not necessarily be conclusive on the question whether the respective rights of the associates and particularly their interest in the annual income of the enterprise were those of partners on the one hand or stockholders on the other.

Since, however, in our view the same result would follow under either hypothesis, we refrain from a determination on this point. If the organization was in effect a corporation it seems to us the situation is controlled by the language in the *Dobrzensky* proceeding, *supra* (p. 311):

The directors could not legally give away the corporate property. We will not assume they acted illegally. Decedent had furnished and was even then furnishing the company with his "invaluable advice, counsel and personal influence which would justify a very large compensation" * * *.

Then "as some slight evidence of appreciation and recognition of these valuable services" the directorate assumed the costs incidental to * * * its future premiums. We conclude that action constituted not a gift to decedent but compensation paid to him for those services. *Frank D. Yuengling*, 27 B. T. A. 782; affd., 69 Fed. (2d) 971; *George Matthew Adams*, 18 B. T. A. 381; *Chauncey L. Landon*, 16 B. T. A. 907. Cf. *David Herbert Botchford*, 29 B. T. A. 656; affd., 81 Fed. (2d) 914.

And, since decedent acquired this policy for such services, that policy must be regarded, in law, as "taken out by the decedent upon his own life."

Here also, according to the certificate issued to decedent, his protection under the policy was "provided by the Mayo Clinic in appreciation of your cooperation and in recognition of your contribution to the perpetuation of its purposes and ideals."

The language quoted from the *Dobrzensky* case refers to an individual policy. Consideration of a group policy in the same decision resulted in a determination that it was not to be included in the estate, upon the authority of *Bessie M. Ballinger, Executrix*, 23

B. T. A. 1312.[4]  For the reasons about to be stated, however, we believe the language quoted to be more nearly applicable to the present situation than the decision as to the group policy.

As a preliminary it is to be observed that the mere designation of the policy is of little consequence. In *N. Loring Danforth*, 18 B. T. A. 1221, we said, p. 1222: "There is nothing to justify the petitioner's pleaded contention that this was 'group insurance,' and if it were to be so designated, the designation alone would not warrant the omission of the premiums for [from] petitioner's income. That the purpose, plan and effect was to give petitioner this additional compensation for his services is manifest. The benefit was directed to him, and the corporation received no more benefit than any employer derives when it increases the compensation of its employee."

Except for the designation, however, there is little, if anything, to characterize the present policy as true group insurance from decedent's standpoint. Decedent was not only a member of the Mayo Properties Association and a director of the Mayo Clinic, but he and the other directors responsible for their conduct, including the issuance and terms of the policy, were the sole "stockholders" of the latter and preferred beneficiaries under the policy. For it is significant that the policy, with an upper limit, was proportional in its benefits to the salaries of those insured and that the premiums were based upon their ages. The group involved was a personal service enterprise readily distinguishable from a large industrial corporation. All of the foregoing characteristics have been considered and determined to be consequential in the decision of similar cases. Giving effect to all of them and without attempting to evaluate their separate importance we have arrived at the conclusion above set forth.

In *George Matthew Adams*, 18 B. T. A. 381, 383, we said:

Counsel for the respondent argues that ordinarily group insurance is taken out without the consent and without the knowledge in most cases of the employee, who is not consulted, who does not make the application for the insurance, and who is told about the matter after the thing has been accomplished; that here we have the actual participation by all the employees insured, who were also directors as well as the beneficiaries; that the employees on whom the policies were taken out made out the applications, had knowledge of what

---

[4] In that case "this Board construed the quoted words [of the statute] literally." *M. W. Dobrzensky, supra*, p. 310. In *Edgar A. Igleheart et al., Executors*, 28 B. T. A. 888, 908, we expressed our unwillingness "to ignore the intent of the statute or to nullify it by mere technical construction." On appeal, this position was sustained, the court there saying (77 Fed. (2d) 704, 711): "The statute readily could be evaded if a policy, under which the beneficiary may be changed, could be taken out by a corporation or firm on the life of an official or member of that corporation or firm, and the latter could acquire the policy and have a new beneficiary designated, with the result of excluding from his gross estate the amount in excess of $40,000 receivable by the beneficiary under the policy * * *."

was being done, and gave their consent to what was done; and that the amount of the insurance (the face value of the policy) obviously was set by the individuals, since they were directors of the corporation and the minutes show that the directors passed on such insurance.

It was also urged upon us on behalf of the respondent that group insurance could not be compared to the situation existing in the instant proceeding, since it would appear that the corporation was practically a personal service corporation, where the activities of the stockholders, and especially the activities of petitioner, produced the income and that such a situation is not at all analogous to one where insurance is taken out for thousands of employees who know nothing about it * * *. We agree with counsel for respondent that the situation here is quite different from the one contemplated by that portion of Article 33, Regulations 62, relative to premiums paid on group insurance policies * * *.

And in *Chauncey L. Landon*, 16 B. T. A. 907, 909, we said: "The fact the payments to all of the employees were based upon the amount of their salaries, carries with it a strong indication that the payments were in consideration of past services * * *."

Some of the cases cited consider whether such premiums are additional compensation, taxable as such to the employee. While this precise question is not before us, the applicable reasoning is comparable (see *M. W. Dobrzensky, supra*, p. 310), and the absence of any estate tax regulation [5] as to group insurance makes this if anything a stronger case for the respondent than the *Adams* and *Danforth* proceedings.

It follows that nothing in the *Ballinger* or *Dobrzensky* decisions, where some or all of these facts were absent, is inconsistent with our conclusion in this proceeding that if the organization with which decedent was associated is to be regarded as a corporation the proceeds of the policy before us should be included in his estate.

If, on the other hand, the organization was a partnership for some part or all of the critical period, the argument that decedent indirectly paid the premiums is even stronger. For whatever voluntary arrangement with respect to the disposition, of the net profits might have been made by the partners, their right to receive the income in the first instance and their interest in the partnership property and profits can only result in the conclusion that payments made by the partnership were no more than agency transactions in which the funds were actually the property of the partner benefited. *M. W. Dobrzensky, supra*, 311, 312; *Sampson* v. *United States*, 1 Fed. Supp. 95. And, while not conclusive,[6] it is of some significance that for the greater part of this period tax returns were being filed by decedent as a partner and income tax was being paid on his proportionate share

---

[5] Cf. Regulations 86; art. 22 (a) 3—"* * * Premiums paid by an employer on policies of group life insurance covering the lives of his employees, are not income to the employees."

[6] Cf. *Helvering* v. *Reybine*, 83 Fed. (2d) 215.

of the partnership profits, an amount which was, according to the stipulation, reduced by the premiums paid for the "group policy." [7]

We accordingly conclude that the policy was taken out by decedent on his own life because it was procured and paid for at least indirectly by him.

Reviewed by the Board.

*Decision will be entered for the respondent.*

LEECH concurs only in the result.

---

[7] This treatment was apparently accepted by respondent, perhaps upon an interpretation of his regulations. Regulations 65 and 69, art. 293; Regulations 74 and 77, art. 283; Regulations 86, art. 24–3.