## COMMERCIAL NAT. BANK & TRUST CO. OF NEW YORK

v.

## JOHNSON.

United States District Court,
S. D. New York.

May 5, 1954.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for plaintiff, Charles V. Parsell, Caesar L. Pitassy, New York City, of counsel.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of New York, New York City, Samuel R. Pierce, Jr., Asst. U. S. Atty., New York City, of counsel.

GODDARD, District Judge.

This is a suit by the Commercial National Bank and Trust Company, as executor of the will of Sidney R. Kent, to recover estate taxes claimed to have been illegally collected, with interest thereon. The sole issue here is the includability, as part of the decedent's taxable estate, of the $10,000 proceeds of a group life insurance policy. The government concedes that certain refunds on other over assessments are owing to the plaintiff.

On February 6, 1928, the Travelers Insurance Company issued a group life insurance policy to the Fox Film Corporation [subsequently Twentieth Century-Fox Film Corporation]. The decedent, Kent, was first employed by Fox on March 28, 1932, and on April 19, 1932, he was elected president of the corporation, the position he held at the time of his death on March 19, 1942. At the time of his employment, Kent was issued a certificate of insurance under the group.

policy, and his policy was in force at the date of his death.

The group policy was issued to Fox for a term of one year, renewable from year to year. It provided death and total disability benefits, and individual certificates were issued to the employees covered. All corporate employees, save certain excepted groups, were covered. The coverage of an employee would terminate with the end of his employment, with the provision that, in the event of such termination of employment, the employee could convert without further evidence of insurability to a policy in the same face amount, upon payment of the premium. Fox paid the full amount of the premiums on the group policy, yearly. The employees had the right to change the beneficiary.

Those employees entitled to coverage were insured after six months service with the company. The amount of coverage under the group plan was in proportion to the length of service with the corporation and the position of responsibility held. When an employee because of greater length of service, or promotion to a higher position, fell within a higher class entitled to a policy with a larger face amount, he became entitled to that increase in coverage, but the policies provided that "no increase in the amount of insurance of any Employee shall become effective when he is not actually at work".

Kent was in Class VI, the highest class of coverage which included elected officers and department heads, and thus had a policy in the amount of $10,000. Initially, he designated his wife as beneficiary, but in 1939 he changed it by designating the plaintiff herein, and his wife, and one Elmer R. Short, as co-trustees under a trust indenture executed by Kent.

The individual certificates issued to the employees contained a statement from Kent. It read:

"As an expression of appreciation of your loyalty and cooperation in advancing the interests of the corporation, I have pleasure in presenting to you this certificate of insurance, the cost of which is borne by the corporation, in the belief that it will give a sense of protection and comfort to you and your dependents.

"It goes to you as an expression of goodwill, with the hope that your association with the corporation will continue to be productive of mutual benefit and satisfaction."

The government asserts two grounds of includability. First, that it is taxable under Section 811(g) of the Internal Revenue Code, on the ground that the premiums were paid indirectly by the decedent. Second, that it is taxable under Section 811(c) of the Code, as a transfer in contemplation of death.

The applicable statute and regulations relating to the first ground of taxability are found in the margin, as they provided at the time of decedent's death.[1]

---

1. Sec. 811, Title 26 U.S.C.A.
   "Gross estate
   "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *.
   "(g) Proceeds of Life Insurance.—To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."
   Reg. 105, Sec. 81.25. Taxable insurance.

"* * * Insurance receivable by beneficiaries other than the estate is considered to have been taken out by the decedent where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired, whether or not he made the application."
   Reg. 105, Sec. 81.27. Insurance receivable by other beneficiaries.
   "The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not receivable by or for the benefit of his estate must be included in his gross estate as follows:
   * * * * *

The decedent had well over $40,-000 of insurance, and the parties are agreed that to find this group insurance taxable in the estate, the basic question is whether the premium payments were made indirectly by the decedent. There is no question but that the power to change beneficiaries is a legal incident of ownership, thereby meeting the second requirement of includability. Cf. Chase National Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405.

The decisions in the Tax Court are not wholly consistent. It has been held in a line of decisions that the proceeds of group life insurance policies applied for and paid by the employer, with the right in the employee to change the beneficiary, are not includable in the decedent employee's estate. Ballinger v. C. I. R., 1931, 23 B.T.A. 1312; Dobrzensky v. Com'r, 1936, 34 B.T.A. 305; Estate of Hahn, 1938, 38 B.T.A. 3; Estate of Shields, 1 T.C.M. 585, (1943).

The Hahn case, supra, should be distinguished on its facts, since that involved a closely held corporation which took out the insurance on its officers and principal shareholders to avoid embarrassing demands for dividends by the families of those officers who died; the right to change beneficiaries was restricted within a specified class; and the policies were retained in the possession of the corporation.

The keystone of this line of cases is the Ballinger decision, which was based upon a literal interpretation of the statutory provision, "taken out by the decedent upon his own life". It held that since the employer corporation applied for the insurance, it was not "taken out by the decedent". The Dobrzensky and Shields cases followed the Ballinger decision.

However, I do not believe that the Ballinger case is sound authority because the Regulations provide that the insurance is deemed to be "taken out by the decedent" where he paid the premiums "directly or indirectly". It obviously contemplates a broader interpretation than that given to the statute by the Ballinger decision. Cf. First National Bank & Trust Co. of Minneapolis v. C. I. R., 1939, 39 B.T.A. 134. The latter case is said to be a disaffirmance of the Ballinger rationale. Rabkin & Johnson, Federal Income Gift & Estate Taxation, Vol. 2, p. 6213.

On the other hand, there is a line of cases in the Tax Court holding that such proceeds are includable in the estate. First National Bank & Trust Company of Minneapolis, supra; Estate of Welliver, 1947, 8 T.C. 165; Estate of Saxton, 1949, 12 T.C. 569.

The First National Bank case reasoned that premium payments by the employer could be found to be indirect payments by the employee on the theory that it amounted to additional compensation to him. It so found, noting the provision, similar to the one in the case at bar, in the employee's individual certificate of insurance, that it was provided "in appreciation of your cooperation and in recognition of your contribution" to the organization. The decision was based partly on the fact that the policies were not true "group insurance", and partly on the fact that the decedent "indirectly" paid the premiums. Rabkin & Johnson, supra, Vol. 2, p. 6213. The Welliver case also found that the employer's payments were deemed to be compensatory to the employee.

In Federal Estate and Gift Tax Aspects of Employee Benefit Plans, 48 Col.L.R. 393, it is stated at 400:

"In Estate of Judson C. Welliver the Tax Court in determining that the premium payments were compensatory, gave weight, inter alia, to the facts (a) that only employees were eligible and (b) that employees 'were * * * precluded from ap-

"(b) To the extent to which such insurance was taken out by the decedent upon his own life (see section 81.25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date, * * *."

plying for or increasing the amount of insurance taken * * * unless at the time of application they were working full time and for full pay.' "

In the case at bar too, only employees were eligible and they could not qualify for an increase of coverage unless they were actually at work at the time.

Continuing, the above article stated:

"It is difficult to forecast what will be considered compensatory, but the Welliver decision indicates that the courts will interpret the provision broadly, and it may be that any insurance which would not have been obtained but for the fact of employment will be deemed to have been indirectly paid for by the deceased."

The issue then is whether the payments of premiums by the corporation amounted to compensation for services rendered. There are no records in existence today which would throw light on the theory of Fox in adopting this group plan. However, some comments on the general theory of corporate group life insurance are informative.

In The Development of Group Life Insurance, 6 Journal of American Society of Chartered Life Underwriters 347, at 348, the author suggested that some of the motivating factors for the adoption of such plans are: 1) It contributes toward attracting desirable personnel; 2) It reduces labor turnover; 3) It is frequently demanded by unions in collective bargaining. It tends to "stabilize employment and contribute to the peace of mind and sense of security of the employee." Group Life Insurance; Development, Codification, Trends and Use, 1953 Insurance Law Journal 389, at 394. In Some Economic and Legal Aspects of Group Insurance Policies, 36 Col.L.R. 89 (1936), it is said, at 91:

"Employers who pay part and occasionally all of the premiums and who constitute the moving force in its adoption, use it as an efficient vehicle for the acquisition of the employee's goodwill, the increase of efficiency, and the reduction of turnover."

It further remarked, in note 11 on page 91, speaking of such plans inaugurated by certain corporations:

" * * * it must be presumed that recompense for the employer's outlay is expected in the form of labor's acquiescence in a reduction or failure to increase wages or in speed-up of labor productivity without proportionate pay rise."

I believe that these comments are fair appraisals of the realities of the arrangement.

In the light of these statements, and in view of the fact that the plan is so closely fitted to the employment relationship, it seems evident that the premium payments by the employer are in the nature of additional compensation to the employee for services rendered or to be rendered. The fact that the policies provide increased coverage for greater length of service, and higher positions of responsibility; that the coverage terminates with the end of employment; that no increase in coverage may be effective unless the employee is actually at work at the time; and that the individual's policy provides that it is issued "with the hope that your association with the corporation will continue to be productive of mutual benefit and satisfaction"; all compel this conclusion.

■ It is true, as the plaintiff points out, that from an income tax standpoint, the premiums paid by an employer upon group life insurance on the lives of its employees, are not taxable income to the employees. Reg. 103 Sec. 19.22(a)–3, 1942 Federal Tax Service, Prentice-Hall, Par. 7704. They are deductible, however, by the employer as ordinary and necessary business expenses. 1942 Federal Tax Service, Prentice-Hall, Par. 12,-648.

Law Opinion 1014, 2 Cumulative Bulletin 88, June, 1920, declared that such premium payments were not taxable as additional compensation to the employ-

ees, for income tax purposes. However, the criteria determinative of income taxability are not necessarily determinative of estate taxability. Cf. Higgins v. Commissioner of Internal Revenue, 1 Cir., 1942, 129 F.2d 237; Commissioner of Internal Revenue v. Douglass' Estate, 3 Cir., 1944, 143 F.2d 961. The decedent having died while his insurance was in force, and the proceeds having been paid over, there is no question but that there has been the receipt of something of value, for estate tax purposes, arising out of the employment relationship. The facts bear out, as seen above, that the premium payments were in the nature of compensation to the decedent, and it has so been held by the Tax Court in similar estate tax cases, cited above.

It is thus evident that Law Opinion 1014 does not control here. Indeed, it is to be noted that Regulation 103, Sec. 19.-22(a)–3, supra, which holds the premium payments not taxable on the employee's income tax, expressly covers "compensation paid other than in cash", thereby recognizing that it is in fact compensation.

■ Since there has been the receipt of something of value, decisions relating to income tax are instructive on the question of whether it is in the nature of compensation as distinct from a gift. The two are mutually exclusive. Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32. There is a presumption that benefits received in addition to regular remuneration constitute additional compensation. Commissioner of Internal Revenue v. Bonwit, 2 Cir., 1937, 87 F.2d 764; Poorman v. Commissioner of Internal Revenue, 9 Cir., 1942, 131 F.2d 946; Payments to Employees—gifts or compensation for services, 31 Taxes 620 (1953) at 621. To constitute compensation for services, it is not necessary that there be a legal obligation discharged. Poorman v. Commissioner of Internal Revenue, supra.

Without further extension of this opinion, it is sufficient to state that the corporation took deductions for the premium payments as ordinary and necessary expenses for income tax purposes, and in nowise treated them as gifts. Had it been a gift, it would not have been deductible.

■ I therefore hold that the premium payments by the corporation were in the nature of additional compensation for services rendered by Kent, and this constituted indirect payment by Kent. The proceeds of the insurance are consequently properly includable in the taxable estate.

It is therefore unnecessary to consider the second ground of includability asserted by the defendant.

Judgment may be entered for the plaintiff in the amount of $6,420.17, plus interest of $2,190.24, the refund conceded by the defendant to be owing on certain other over-assessments.