SHIROLD D. AND VIVIAN C. STONE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stone v. Commissioner
Docket No. 25736-82.
United States Tax Court
T.C. Memo 1985-544; 1985 Tax Ct. Memo LEXIS 88; 50 T.C.M. (CCH) 1345; T.C.M. (RIA) 85544; October 29, 1985. John A. Rollins,G. Nicholas Casey, Jr., and Steven F. Luby, for the petitioners. Ronald T. Jordan and Mark S. Feuer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $193 in petitioners' Federal income tax for 1979. The only issue to be decided is whether *89 "out-of-work" benefits paid to petitioner Shirold D. Stone by his union pursuant to an employee lockout are taxable to him as income. FINDINGS OF FACT Petitioners Shirold D. and Vivian C. Stone resided in Minden, West Virginia, at the time their petition was filed. Petitioners filed a joint Federal income tax return for 1979 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner Shirold D. Stone (hereinafter petitioner) was employed in 1979 as a mechanic with the Lee Norse Company (Lee Norse) in Backley, West Virginia. At that time, petitioner was a member of the Chauffeurs, Teamsters and Helpers Local Union No. 175 (local union), affiliated with and chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters Union). On January 15, 1979, the labor management agreement between the Teamsters Union and Lee Norse expired. Although its employees desired to continue working while negotiating a new agreement, Lee Norse locked the gates to its premises on January 16, 1979, and would not permit employees who were members of the Teamsters Union (member Mployees) to work. [1]
*90 On January 31, 1979, the Teamsters Union began paying out-of-work benefits pursuant to its constitution (union constitution) to members who had been locked out by Lee Norse. [2] Out-of-work payments were made to any member employee of Lee Norse whose dues were not in arrears in excess of one month. Any member employee who was employed for 3 or more days in a work week was not entitled to receive out-of-work benefits. No strike activities, including picketing, resulted from the lockout, until a picket was ordered approximately 3 days prior to the ratification of the new labor management agreement between Lee Norse and the Teamsters Union. The purpose of the picket was to deter Lee Norse from filling orders from coal companies which were picking up their own parts at the warehouse. The member employees were not required to picket in order to receive their benefits. *91 Out-of-work payments were made to member employees as follows: $34 for each of the first 4 weeks beginning at the end of the second week of the lockout, and $45 for the fifth week and each week thereafter. All member employees received the same amount of benefits regardless of their age, marital status, or number of dependents. No inquiries were made as to the financial status or need of the member employees pursuant to the payment of out-of-work benefits. Petitioner received a total of $1,175 in out-of-work benefits over a period of 27 weeks during 1979, and he was unrestricted in the use of these benefits. Petitioner received a Form 1099 from the Teamsters Union for the $1,175 in benefits he received, but did not include this amount in income on petitioners' 1979 income tax return. Petitioner, along with other members, applied for unemployment compensation, but was denied benefits. On August 1, 1980, the Thirteenth Judicial Circuit Court for the State of West Virginia ruled that Lee Norse employees who had been locked out were entitled to unemployment compensation benefits. That ruling was affirmed by the Supreme Court of Appeals of West Virginia on May 18, 1982. [3] In *92 accordance with the circuit court's decision, unemployment compensation was paid to member employees locked out by Lee Norse. Member employees were not required to refund the out-of-work payments to the Teamsters Union following the award of unemployment compensation to member employees. OPINION The only issue before us is whether the out-of-work benefits received by petitioner pursuant to the lockout of Lee Norse employees constitute taxable income to him. Petitioner contends that the out-of-work benefits paid by the Teamsters Union were gifts within the meaning of section 102(a)[4] and therefore not includable in income. Whether a transfer qualifies *93 as a gift for income tax purposes depends on the intent of the transferor. Commissioner v. Duberstein,363 U.S. 278, 285 (1960). The transferor's intent is not determined by his characterization of the transaction, but by an objective inquiry into the surrounding facts and circumstances. Commissioner v. Duberstein,supra at 286; Bogardus v. Commissioner,302 U.S. 34, 40 (1937). For the transfer to constitute a gift under section 102(a), the surrounding facts and circumstances must show that the gift proceeds from a "detached and disinterested generosity," Commissioner v. LoBue,351 U.S. 243, 246 (1956); Commissioner v. Duberstein,supra at 285, or "out of affection, respect, admiration, charity or like impulses" on the part of the transferor, Robertson v. United States,343 U.S. 711, 714 (1952). In the case of union benefits, the Supreme Court has upheld a jury finding that strike benefits in the form of food vouchers and rent payments to a nonunion worker unemployed and without income because of the union's strike constituted gifts excludable from gross income under *94 section 102(a). United States v. Kaiser,363 U.S. 299 (1960). In our view, the holding the Kaiser is a narrow one, namely, that the determination under the appropriate legal standards of whether a transfer is a gift for income tax purposes is the responsibility of the fact finder. Colwell v. Commissioner,64 T.C. 584, 587 (1975). In Colwell, this Court enumerated a list of factual elements which the courts have considered relevant in determining whether union benefits constitute gifts for income tax purposes: (1) whether the union was under a moral or legal obligation to make the payments; (2) whether the recipient's financial status or need was considered; (3) whether the benefits continued to a recipient who found othe employment; (4) whether the recipient was a member of the union; (5) whether the recipient was required or was under a moral obligation to perform strike duties; and (6) whether any restrictions were placed on the use of the payments, *95 specifically, whether the benefits were restricted to payment of basic necessities or whether the recipient had unfettered control over use of the funds. This list of factors is not necessarily exclusive but suggests the breadth of the inquiry. In the light of the record as a whole, we find that the lockout benefits paid to petitioner by the Teamsters Union constituted income in 1979. The first factor is whether the union had a legal or moral obligation to provide benefits in the event of a lockout. Petitioner argues that because the local union was required to request out-of-work benefits and receive approval from the Teamsters Union, the union was under no obligation, legal or moral, to pay such benefits. Even if petitioner is correct, "the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift." Commissioner v. Duberstein,363 U.S. at 285. However, at least a moral obligation to pay strike benefits has been found in cases where, as in the present one, the union's constitution mandates a request and approval procedure. *96 See Hagar v. Commissioner,43 T.C. 468, 484 (1965). [5] Such procedure is more consistent with the union's use of benefit payments to influence its members' attitudes toward its contract negotiations than with a charitable impulse or detached and disinterested generosity.
Courts have found the second factor, whether the benefits were paid in consideration of the recipient's financial status or need, to be of primary importance. See, e.g., Woody v. United States,368 F.2d 668, 671 (9th Cir. 1966); Placko v. Commissioner,74 T.C. 452, 455 (1980). This Court in Colwell v. Commissioner,64 T.C. at 588, stated: Thus, unless the union makes inquiry into the personal needs of the recipient and makes its payments according to that need, it is impossible to distinguish any benefits as being paid primarily out of a detached and disinterested generosity or other charitable impulse rather than from the desire to ensure the effectiveness of the strike. * * * Of course, such a showing will not ipso facto prove that the motive was detached and disinterested *97 generosity. However, we feel such a showing is a required minimum * * *. In the instand case, no inquiry was made by the Teamsters Union as to the financial status or needs of the member employees. All member employees of good standing were paid the exact same amount of out-of-work benefits, regardless of their marital status or number of dependents. Petitioner argues that individual inquiry into the members' financial needs would have been unduly burdensome considering the relatively small amount of out-of-work benefits paid by the Teamsters Union. We find no support in the record for this contention. Furthermore, the union constitution contemplates no inquiry into the financial needs or status of the members, but provides for set amounts to be paid to all members in good standing in the event of a strike or lockout. Continuing benefits to a recipient who has found other employment indicates that the benefits bear little or no correlation to the recipient's economic needs. In the instant case, the union constitution denies benefits to any member employee who obtains at least 3 days of employment in any week. While this constitutional provision works in favor of petitioner's *98 position, it has not been afforded much weight in the courts' determination. In Colwell, for example, the benefits to the recipient were reduced by the number of shifts per week he had worked. Nevertheless, the Court found the union benefits to be income to the recipient, relying heavily on the union's failure to inquire as to the recipient's financial needs. Further indication that the Teamsters Union did not provide benefits based on economic need is the absence of a provision in the union constitution denying benefits to member employees receiving public assistance. We think it also significant that the union did not require repayment of the out-of-work benefits after unemployment compensation was awarded to member employees pursuant to the decision of the West Virginia Supreme Court of Appeals. Another factor to be taken into account is whether the recipient of strike benefits was a member of the union providing those benefits. Out-of-work benefits paid to nonmember employees is an indication of detached and disinterested generosity. See United States v. Kaiser,363 U.S. 299 (1960).In the instant case, petitioner and all other recipients were members *99 of the Teamsters Union, which paid his benefits.Petitioner argues that because all the Lee Norse employees locked out in 1979 were members of the Teamsters Union, this factor is irrelevant to our determination. However, the union constitution contemplates payment of out-of-work benefits only to member employees, regardless of the circumstances. Where the recipient is required or obligated to participate in strike-related activities, such as picketing or refraining from crossing a picket line, the benefit payments are less likely to be gifts. In such cases, the motivating force behind the payment of benefits is not charity, but the anticipation of economic benefit to the union and its members by assisting the union in reaching its goals and providing its members with job security. Hagar v. Commissioner,43 T.C. 468, 485 (1965); Colwell v. Commissioner,supra at 589; Brown v. Commissioner,47 T.C. 399, 408 (1967), affd. per curiam 398 F.2d 832 (6th Cir. 1968). The instant case involved a lockout of employees by Lee Norse, *100 rather than a strike initiated by the union. Petitioner argues that because the employees were willing to work without a contract, but were prevented from doing so by the management's action, the union was not in a position to anticipate a benefit, economic or otherwise, from making the payments. We do not agree. In Placko v. Commissioner,74 T.C. 452 (1980), the airline pilots' union paid benefits to members laid off by Northwest Airlines, Inc., after a 3-day strike. Although the benefits were requested pursuant to the layoff, and the pilots were not required to participate in any strike-related activities, the Court found that "the payments aided * * * [the unions] in maintaining their effectiveness as a bargaining agent in negotiations with Northwest and in overcoming the chilling effects of the retaliatory action by Northwest's management as perceived by the union." 74 T.C. at 456.Likewise, the Teamsters Union in the instant case, by lending support to its members in the form of benefit payments, stood to maintain its effectiveness as a bargaining agent and to reduce the chilling effects of the lockout. Moreover, Douglas Church, Business Representative *101 of the local union, testified that where strike activity does occur, the member employees are required to participate in order to receive their benefits.[6]
As further evidence that the union benefits were not charitable gifts, petitioner and other member employees were not restricted in their use of the out-of-work benefits; thus, "the benefits could as well have paid for an extended vacation as to have paid for rent or other basis needs." Colwell v. Commissioner,supra at 589. In addition, the issuance by the union of a Form 1099 to petitioner in the amount of the benefit payments further indicates that the union did not intend the out-of-work benefits to be gifts but treated them as income to petitioner. Section 6041 and section 1.6041-1(b), Income tax Regs., require persons engaged in a trade or business, *102 including an exempt organization, to issue a Form 1099 to recipients of $600 or more in rent, salaries, wages, premiums, annuities, compensations, renumerations, emoluments, or other fixed or determinable gains, profits, and income. The union's issuance of the Form 1099 is thus evidence of considerable weight as to the union's intention, and the Supreme Court has stated that "what controls is the intention with which payment, however voluntary, is made." Bogardus v. Commissioner,302 U.S. at 45. Upon consideration of all of the evidence, we find that the out-of-work benefits paid to petitioner by the Teamsters Union constitute income to petitioner in 1979. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All nonmanagement employees of Lee Norse were members of the Teamsters Union.↩
2. Art. XII of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which is binding on the local union, reads as follows in pertinent part: Out-of-Work Benefits Section 4. Out-of-work benefits in strikes recognized as properly subject to the payment of out-of-work benefits or relief in cases of lockouts, etc., shall be paid to all members not in arrears for dues in excess of one (1) month and otherwise in good standing, who are members of a Local Union not more than one (1) month in arrears in per capita tax, at the rate of thirty-five dollars ($35.00) per week for the first four (4) payments and forty-five dollars ($45.00) per week for the fifth (5th) payment and thereafter * * *. * * * Section 5. * * * (c) No member of a Local Union on strike shall be entitled to weekly benefits unless he reports to the proper officers of the Local Union or International Union as prescribed by the Executive Board, and no member who shall receive a week's work (three (3) days to be considered a week) shall receive benefits. Any member refusing to work for an employer considered fair, while on strike, shall be debarred from all benefits. * * * (f) Prior to submission to the International Union, all requests for the approval of out-of-work benefits shall be submitted to the appropriate Joint Council, Area Vice President and Area Conference for their recommendation as to whether the request should be approved or disapproved. * * * Lockout Section 9. Among other circumstances, a declaration on the part of an employer, or a combination of employers, to the effect that their employees must cease their connection with the International Union or cease work, shall be deemed a lockout. * * * In the event of a lockout, out-of-work benefits shall be paid under the same terms and conditions as set forth in Article XII, Section 4, excepting that neither strike votes nor prior notice to the International Union shall be required as a condition of eligibility and such out-of-work benefits shall be payable at the end of the second week of the lockout. * * *↩
3. Lee-Norse v. Rutledge,291 S.E.2d 477↩ (W. Va. 1982).
4. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. Sec. 102(a) provides as follows: (a) General Rule.--Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩
5. Phillips v. Commissioner,T.C. Memo. 1965-268↩.
6. Douglas Church further testified that member employees had not been required to participate in the picketing which was ordered in Aug. 1979, because the union had been paying the benefits for months prior without the pickets.↩